In re Jurgen Werner LENKE, Debtor.

Jurgen Lenke, Plaintiff,

v.

Reinhold Tischler; Boulder Canyon Ranch, an Arizona corporation; Mark Svedja; The State of Arizona; and The Maricopa County Prosecutor's Office, Defendants.

Bankruptcy No. 96–02098–PHX–RJH.
Adversary No. 00–00167.

United States Bankruptcy Court,
D. Arizona,
Phoenix Division.

May 17, 2000.

Peter H. Honigmann, Foley & Honigmann, Phoenix, AZ, for plaintiff/debtor.

Denise Ann Faulk, Assistant Attorney General, Phoenix, AZ, for State of Arizona.

Richard Romley, Maricopa County Attorney, Phoenix, AZ, Mark W. Bennink, Maricopa County Attorney's Office, Southeast Facility, Mesa, AZ, for Maricopa County.

Dale D. Ulrich, Phoenix, AZ, Chapter 7 Trustee.

## OPINION

RANDOLPH J. HAINES, Bankruptcy Judge.

Debtor Jurgen Lenke ("Lenke" or "Debtor") filed a Complaint to Determine Dischargeability of a Debt and an Application for Preliminary Injunction to enjoin his state criminal prosecution for theft. Defendant State of Arizona moved to dismiss, asserting Eleventh Amendment sovereign immunity and also arguing that the Ninth Circuit *en banc* decision in *Gruntz v. County of L.A. (In re Gruntz)*, 202 F.3d 1074 (9th Cir.2000), precludes bankruptcy courts from enjoining a criminal prosecution even if it is a disguised effort by the prosecutor to enforce payment of a discharged debt.

The Court concludes that neither the Eleventh Amendment nor *Gruntz* precludes the relief sought, and therefore denies the State's Motion to Dismiss. But the Debtor has not shown either a likelihood of success on the merits nor imminent irreparable harm sufficient to warrant enjoining criminal prosecution, so the Debtor's Application for Preliminary Injunction is also denied.

### Factual Background

In 1995, Lenke joined with Reinhold Tischler ("Tischler") to form a corporation, Boulder Canyon Ranch, Inc. (the "Corporation"), to conduct horseback riding tours in the Tonto National Forest north of Scottsdale, Arizona. They were each to invest $50,000, but Lenke was to do all the

work and run the business. Either share-holder could dissolve the corporation by written notice to the other.

Within less than a year Tischler became dissatisfied and suspicious of Lenke's running of the business and elected to dissolve the corporation. Upon inspecting the corporate books and records he concluded that Lenke had used corporate funds for personal purposes, had withdrawn his own capital investment, had paid himself an unauthorized salary, and had otherwise misappropriated corporate funds and assets. In March, 1997, Tischler filed a criminal complaint against Lenke with the Maricopa County Sheriff's Office, alleging that Lenke had stolen or embezzled approximately $30,000 from the corporation. The Maricopa County Attorney's Office investigated the case and filed a criminal complaint against Lenke in the Maricopa County Justice Court, which conducted a probable cause hearing and concluded probable cause existed for a criminal action to proceed against Lenke. Consequently a criminal complaint was lodged against Lenke in Maricopa County Superior Court in December, 1998. After several continuances, trial was set for February 2, 2000.

Lenke had filed an individual chapter 11 petition in March of 1996, and converted his case to chapter 7 in August, 1997. He did not list Tischler or the Corporation as creditors and did not give them notice of the bankruptcy. Lenke asserts that Tischler had notice of the bankruptcy case, however, because Tischler's attorney Mark Svejda ("Svejda") filed a proof of claim on behalf of another creditor in that case, sought stay relief, conducted extensive discovery, opposed Lenke's proposed plan of reorganization and ultimately forced the conversion to chapter 7. Because it is not necessary to the result, the Court makes no finding as to whether Tischler had notice of Lenke's bankruptcy but will assume that he did. Tischler did not file any complaint objecting to the discharge of the "debt" Tischler believed Lenke owed him on account of the misappropriations from the Corporation, and Lenke's discharge was entered in October, 1998.

One day before his criminal trial was to commence, Lenke for the first time gave notice of his bankruptcy to the Superior Court and asserted that the criminal trial would violate his discharge injunction because it was a disguised effort to collect a discharged debt. The Superior Court informed Lenke that the trial would proceed unless he obtained injunctive relief from the Bankruptcy Court by April 21, 2000.

Lenke filed a First Amended Complaint to Determine Dischargeability of Debt on April 5, and the present Application for injunctive relief on April 10, naming as defendants Tischler, the dissolved Corporation, Svejda, the State of Arizona, and the Maricopa County Prosecutor's Office. After briefing by all parties, the Court heard oral argument on April 21, 2000 and ruled from the bench, denying both the State's motion to dismiss and Lenke's application for injunctive relief. This opinion amplifies the findings and conclusions issued from the bench in support of both of those rulings, particularly with respect to the proper roles of bankruptcy courts and state courts in light of sovereign immunity and the *en banc* opinion in *Gruntz*.

**Jurisdiction vs. sovereign immunity**

The threshold issue is jurisdictional. The State of Arizona has asserted Eleventh Amendment immunity which, if applicable, is jurisdictional. *Mitchell v. Calif. Franchise Tax Bd. (In re Mitchell)*, 209 F.3d 1111 (9th Cir.2000).

An ordinary discharge order may not constitute a "suit" for Eleventh Amendment purposes even if it discharges a debt owed to a state. *Mitchell, supra, citing Texas v. Walker*, 142 F.3d 813, 820–25 (5th Cir.1998), *cert. denied*, 525 U.S. 1102, 119 S.Ct. 865, 142 L.Ed.2d 768 (1999) and *Virginia v. Collins (In re Collins)*, 173 F.3d 924, 929 (4th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 785, 145 L.Ed.2d 663 (2000). But it does rise to the

level of a "suit" when the state is named as a party to an adversary proceeding, and in such cases may be barred by the Eleventh Amendment. *Mitchell, supra, citing Walker* and *Maryland v. Antonelli Creditor's Liquidating Trust,* 123 F.3d 777, 786–87 (4th Cir.1997). In *Mitchell,* the Ninth Circuit also considered and rejected the argument that Bankruptcy Code § 106(a) constituted a valid Congressional abrogation of Eleventh Amendment immunity which survived the Eleventh Amendment because it was passed pursuant to Congress' remedial powers under the Fourteenth Amendment. Because this is an adversary proceeding in which the State of Arizona was named and served as a defendant, *Mitchell* renders the State immune from the suit under the Eleventh Amendment.

■ But just because the State of Arizona is immune from this adversary proceeding does not mean that no effective relief could be granted. The Maricopa County Prosecutor's Office is also a named party. It is not clear whether the intent was to name the County, the County Attorney, or all the attorneys in the County Attorney's office. In either case, however, such a suit could proceed despite the State's Eleventh Amendment immunity.

The County is a political subdivision of the State, but because it is also a separate "body politic and corporate," A.R.S. § 11–202(A), it is generally not regarded as sharing the State's Eleventh Amendment immunity. *Lincoln County v. Luning,* 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890).

But the naming of the County Prosecutor's Office evidences an intent to name only an "office" of the County, not the entire County itself. The county prosecutor's office does not appear to be statutorily recognized by Arizona, though it undoubtedly exists as a practical matter. What the statutes do recognize is the county attorney, who "is the public-prosecutor of the county," and who is given the statutory duty to "conduct, on behalf of the state, all prosecutions for public offenses."

A.R.S. § 11–532(A)(1). Under certain circumstances, the suit could proceed against the County Attorney, even though he is prosecuting "on behalf of the state."

The doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), does permit prospective injunctive relief against state officials to enjoin their actions that are contrary to constitutional rights or federal laws. Even though Eleventh Amendment immunity would preclude an action against the state itself, the Supreme Court recognized this alternative avenue of suing the state official in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 70–72 nn. 14 & 16, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), and reemphasized it just last year in *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) ("certain suits for declaratory or injunctive relief against state officers must therefore be permitted if the Constitution is to remain the supreme law of the land"). The Ninth Circuit in *Mitchell* suggested a suit against the debt-collecting official is the proper procedural avenue for discharged debtors to protect themselves from state efforts to collect discharged debts. *Id.,* 209 F.3d at 1116. Finally, the Ninth Circuit Bankruptcy Appellate Panel upheld the jurisdictional basis under *Ex parte Young* for a suit against a state official seeking a declaration that certain taxes had been discharged: "The debtor's suit falls squarely within the parameters of *Ex parte Young.* He alleges the violation of federal law and seeks prospective injunctive relief." *Goldberg v. Ellett (In re Ellett),* 243 B.R. 741, 746 (9th Cir. BAP 1999). *Accord, Wilson v. Cumis Ins. Soc'y, Inc. (In re Wilson),* 246 B.R. 600 (Bankr.E.D.Ark.2000); *Pace v. Kamin (In re Pace),* Nos. 99–17529DWS & 99–0838, 2000 WL 337599 (Bankr.E.D.Pa. March 24, 2000); *Lesniewski v. Kamin (In re Lesniewski),* 246 B.R. 202 (Bankr.E.D.Pa. 2000); *DeAngelis v. Laskey (In re DeAngelis),* 239 B.R. 426 (Bankr.D.Mass.1999).

Therefore the debtor's suit against the Maricopa County Prosecutor's Office could

proceed, either as a suit against the County or as a suit against the County Attorney, to the extent that it merely seeks prospective injunctive relief.

### Criminal Actions To Collect Discharged Debts May be Enjoined

■ Turning to the merits, the State asserts that the Ninth Circuit's *en banc* holding in *In re Gruntz*, 202 F.3d 1074 (9th Cir.2000), prevents bankruptcy courts from enjoining criminal prosecutions on the theory that they are disguised efforts to collect debts.

*Gruntz* is a troubled and troubling case. But for this case, it will be sufficient to determine what it does not hold, rather than what it does.

Gruntz was prosecuted in California state court for failure to make child support payments, while he had a bankruptcy case pending. After he was convicted in state court he asked the Bankruptcy Court to determine that the entire action had violated the automatic stay and was therefore void.[1] The Bankruptcy Court declined, concluding that it was collaterally estopped by the state court judgment. The District Court affirmed on the ground

that the *Rooker–Feldman* doctrine[2] precluded the bankruptcy court from re-determining an issue that had been decided by the state court, *i.e.*, that the criminal prosecution was excepted from the automatic stay. The case was appealed to the Ninth Circuit on the issues of whether the state court had jurisdiction to determine the exceptions to the automatic stay and, if so, what preclusive effect such decisions must be given subsequently in bankruptcy courts.

After two panel decisions[3] the Ninth Circuit took the case up *en banc*. The *en banc* opinion stated that the question presented was "whether a state court *modification* of the bankruptcy automatic stay binds federal courts." 202 F.3d at 1077 (emphasis added). It then concluded that state courts lack such jurisdiction due to "the bankruptcy court's plenary power over core proceedings," and because "any state court modification of the automatic stay would constitute an unauthorized infringement upon the bankruptcy court's jurisdiction to enforce the stay." *Id.* at 1082. To help define the area where the bankruptcy court's power is "plenary,"[4]

1. Gruntz's conviction was upheld by the California Court of Appeals in 1994, so the trial was obviously conducted prior to the 1994 amendment adding the § 362(b)(2) exception to the automatic stay for actions to establish or modify alimony, maintenance or support. Consequently the only exception then applicable was the § 362(b)(1) exception for criminal proceedings, but the Ninth Circuit had held in *Hucke v. Oregon*, 992 F.2d 950 (9th Cir.1993) that criminal proceedings with an underlying aim to collect a debt are nonetheless stayed by § 362(a)(6).

2. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) (original federal district court jurisdiction does not extend to direct appeals from state courts; the only federal jurisdiction over such appeals lies in the Supreme Court); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (the *Rooker* jurisdictional bar extends to claims that are "inextricably intertwined" with state court determinations).

3. 166 F.3d 1020 (9th Cir.1999) *opinion amended and superseded by* 1999 WL 311981, 1999 U.S.App.LEXIS 9655 (9th Cir.1999), *en banc rehearing granted, opinion withdrawn by* 177 F.3d 729 (9th Cir.1999). The amended panel opinion no longer appears in West's Federal Reporter Third Series, but can still be found at 177 F.3d 728 as it appears in West's Bankruptcy Reporter vol. 235.

4. The opinion does not explain why it uses the arcane term "plenary," which it uses at least six times, rather than the statutory terms "original and exclusive" and "original but not exclusive" jurisdiction. 28 U.S.C. § 1334(a) & (b). The term has had no real utility in bankruptcy law since the Code eliminated the Act's distinction between summary and plenary jurisdiction, and it is clear the term is not used in that sense. The term seems to have found its way into the opinion from its use in *Kalb v. Feuerstein*, 308 U.S. 433, 438–39, 60 S.Ct. 343, 84 L.Ed. 370 (1940), *cited in Gruntz*, 202 F.3d at 1080. There, however, the Supreme Court was referring to *Congress'*

the Ninth Circuit relied on the definition of core matters under 28 U.S.C. § 157, and specifically noted that actions to "terminate, annul, or modify" the automatic stay are listed as core at § 157(b)(2)(G). *Id.* at 1081. But after concluding that the Bankruptcy Court was not bound by the state court's "modification" of the stay because it lacked jurisdiction, the Ninth Circuit ultimately upheld the Bankruptcy Court's refusal to void the state court prosecution, holding that criminal prosecutions are not subject to the automatic stay, pursuant to § 362(b)(1), and bankruptcy courts should not attempt to divine a prosecutor's motive to collect a debt, reversing *Hucke v. Oregon*, 992 F.2d 950 (9th Cir.1993). *Gruntz*, 202 F.3d at 1085–87.

Although the opinion is clear in holding that criminal prosecutions are not stayed regardless of their intent, and in holding that state courts lack jurisdiction to modify the automatic stay, it is less clear on the jurisdiction state courts may have to construe the automatic stay. The problem arises because the *en banc* panel stated the issue to be whether the state court had jurisdiction to *modify* the stay, 202 F.3d at 1077, whereas the panel opinions had indicated the state court had not purported to modify the stay, but merely read the Code as providing that criminal prosecutions were not subject to the stay.[5] Consequently because it re-defined the issue, the *en banc* opinion does not provide clear guidance on whether state courts may or may not interpret the stay, *i.e.*, determine whether an action is stayed or not. And if a state court should make that interpretation, the *en banc* opinion does not clearly indicate what binding effect such an interpretation might have on a bankruptcy court that subsequently inherits the issue.

What, then, does *Gruntz* imply as to the state courts' ability to construe and apply various provisions of the Bankruptcy Code, such as the automatic stay and the definitions of debts that are dischargeable and nondischargeable? When a state court and a bankruptcy court are again faced with a scenario similar to that in *Gruntz*, how are they to act? For example, can a state court now apply the substantive holding of *Gruntz* and safely conclude that a criminal prosecution is not subject to the stay, or would that be construed, as it was in *Gruntz's* jurisdictional holding, to constitute an attempted modification of the stay and therefore outside the state court's jurisdiction? The opinion seems to leave open at least four possible interpretations, depending on whether the opinion is read for what it says or for what it does.

1. The state court should proceed with the prosecution ("unless a specific § 105 injunction applies, state trial courts need not seek bankruptcy

---

power over bankruptcy law as being "plenary," rather than describing the scope of bankruptcy courts' jurisdiction, and that is how the term is used the first three times it appears in the *Gruntz* opinion, only thereafter being applied to describe the bankruptcy courts' jurisdiction. Indeed, the jurisdiction at issue in *Kalb* was summary rather than plenary, using the meaning those terms had acquired under the Bankruptcy Act. Beyond that specialized, historic usage, the term is merely "a formal word for full." Garner, A DICTIONARY OF MODERN LEGAL USAGE, at 419 (Oxford University Press 1987). Of course the fact that a federal court has "full" jurisdiction over a matter says nothing about whether such jurisdiction is exclusive or concurrent with state courts, or at least it did not prior to *Gruntz*. In statutory terms, bankruptcy courts have full *and exclusive* jurisdiction only over the bankruptcy case itself and the property of the estate, 28 U.S.C. § 1334(a) & (e), and have full "but not exclusive" jurisdiction over civil proceedings "arising under title 11, or arising in or related to cases under title 11," 28 U.S.C. § 1334(b), which necessarily includes those "core proceedings" that bankruptcy courts may hear and determine as defined in 28 U.S.C. § 157(b)(2), on which the *Gruntz en banc* panel relied to define their "plenary" jurisdiction.

5. *See* 166 F.3d at 1024 ("This appeal turns on whether the California state courts had jurisdiction to determine if the state criminal proceedings against Gruntz were excluded from the automatic stay in bankruptcy."). *See also* Cordry, "The Ninth Circuit And *In re Gruntz*," NORTON BANKRUPTCY LAW ADVISER at 7 (April 2000).

court approval before commencing criminal proceedings," *Gruntz* at 1087), without asking whether it is stayed, because state courts lack jurisdiction to determine the scope of the automatic stay.

2. The state court should await a bankruptcy court's determination that the criminal prosecution is not automatically stayed, because only bankruptcy courts have jurisdiction to make that determination; this is why the *Gruntz* state court's finding of the inapplicability of the stay was not binding on the bankruptcy court.

3. The state court should determine, based on § 362(b)(1) and the holding of *Gruntz*, that criminal prosecutions are not stayed, and therefore proceed with the prosecution, because under the first holding of *Gruntz*, based on how the Ninth Circuit *stated* the issue, state courts lack jurisdiction only to *modify* an automatic stay, not jurisdiction to determine its applicability.

4. The state court should determine the applicability of the automatic stay because it is not bound by the rulings of any federal court except the U.S. Supreme Court (the principle that lies at the heart of *Rooker–Feldman*), and state courts have their own precedents to follow construing the automatic stay. *E.g., Stallings v. Spring Meadows Apt. Complex, L.P.*, 185 Ariz. 156, 913 P.2d 496 (1996). But the state court's determination need not be given full faith and credit by bankruptcy courts ("[I]f it proceeds without obtaining bankruptcy court permission, a state court risks having its final judgment declared void. In this case, the state proceeded properly because the automatic stay does not apply to enjoin state criminal actions...." *Gruntz*, 202 F.3d at 1087).

It is not necessary to arrive at a definitive answer to this question in order to deal with the issue presently before this Court. Instead of addressing the scope of the automatic stay, today's issue raises the slightly different question of whether a bankruptcy court may enjoin a criminal prosecution that allegedly violates the discharge injunction because it is intended as a debt collection. But an answer to this slightly different question does come into focus from a more careful exploration of the implications of *Gruntz*.

The State of Arizona argues that *Gruntz* means all state criminal prosecutions may proceed notwithstanding bankruptcy, but *Gruntz* does not go so far. To the contrary, the *Gruntz en banc* opinion expressly recognized the continuing availability of the relief sought here: "There also is a procedural avenue to forfend state actions that are not subject to the automatic stay but that threaten the bankruptcy estate: a request for an injunction under 11 U.S.C. § 105. The bankruptcy court's injunctive power is not limited by the delineated exceptions to the automatic stay, nor confined to civil proceedings." 202 F.3d at 1086.

This a not a procedural distinction without a difference. It makes sense that instead of the state court (or prosecutor) being concerned that the prosecution might be automatically stayed, and therefore the prosecutor might be held in contempt for proceeding, the bankruptcy court should first make the determination under § 105, if asked to do so by the debtor/defendant, that the prosecution will interfere with the bankruptcy estate or with the debtor's discharge. This is similar to the distinction the Supreme Court made in holding that criminal restitution obligations may be discharged in a chapter 13 case, and enforcement of them barred by the discharge injunction, even though they might not be automatically stayed. *Pennsylvania Dept. of Public Welfare v.*

*Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990).[6]

■ It is also essential, in light of the recent expansion of Eleventh Amendment immunity and its application to discharge complaints in *Mitchell, supra,* that bankruptcy courts retain such injunctive power to enforce the discharge. Absent such power, federal bankruptcy courts would lack the ability to enforce the supremacy of the bankruptcy law, and states would be free to re-institute debtors' prisons should they so choose. The Ninth Circuit made clear in its *Gruntz* opinion that its principal motivating policy was precisely to maintain the supremacy and uniformity of federal bankruptcy law,[7] and that same policy requires bankruptcy courts to retain the power to uphold the discharge should a state attempt to use its criminal processes to collect a discharged debt.

Finally, it is essential that this § 105 avenue remain available in bankruptcy courts because if *Gruntz's* jurisdictional holding were read broadly, then state courts would lack jurisdiction to determine, at least conclusively, the more difficult issues of whether, for example, a restitution order constitutes a debt that has been or can be discharged. By arguing that *Gruntz* bars the injunctive relief sought here, the State of Arizona implies that the rationale of *Gruntz* applies as well to discharge issues as to automatic stay issues, and in this it is correct. The Ninth Circuit's reliance on bankruptcy courts'

"plenary" power over "core" proceedings[8] applies as well to discharge determinations as to automatic stay issues. Under 28 U.S.C. § 157(b)(2)(I) & (J), dischargeability determinations are just as core as are automatic stay issues.

This last point, however, also suggests that *Gruntz* should not be read to mean that states lack jurisdiction to determine the applicability of either the stay or the discharge, but only that they lack jurisdiction to modify either of them (*i.e.,* the opinion should not be read for more than the issue as stated by the Ninth Circuit *en banc*). The motivating principle of *Gruntz* is clearly the bankruptcy courts' plenary power over core matters, which suggests that its rationale should apply equally to the discharge as to the automatic stay, as indeed the State argues here. But it would be far more radical to conclude, if *Gruntz* were read broadly to preclude state court determinations of the *applicability* of the automatic stay, that state courts also lack jurisdiction to determine whether a debt has been discharged. Such a conclusion would reverse the long-standing principle that the discharge may be raised as a defense in state court, so that only rarely should federal court intervention be necessary to enjoin an effort to collect a discharged debt. *See, e.g., Local Loan Co. v. Hunt,* 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) ("the effect of the discharge in bankruptcy is a matter to be determined by any court in which the

6. *Davenport* was decided prior to the 1990 amendment adding § 1328(a)(3).

7. "The rule urged by the County would undermine the principle of a unified federal bankruptcy system, as declared in the Constitution and realized through the Bankruptcy Code. If state courts were empowered to issue binding judgments modifying the federal injunction created by the automatic stay, creditors would be free to rush into friendly courthouses around the nation to garner favorable relief. The bankruptcy court would then be stripped of its ability to distribute the debtor's assets equitably, or to allow the debtor to reorganize financial affairs. 'Such an exercise of authority would be inconsistent with and subvert the

exclusive jurisdiction of the federal courts by allowing state courts to create their own standards as to when persons may properly seek relief in cases Congress has specifically precluded those courts from adjudicating.' *Gonzales [v. Parks],* 830 F.2d [1033,] 1035 [(9th Cir.1987)]. It is but slight hyperbole to say that chaos would reign in such a system." 202 F.3d at 1083–84.

8. "Because of the bankruptcy court's plenary power over core proceedings, the County's argument that states have concurrent jurisdiction over the automatic stay under 28 U.S.C. § 1334(b) is unavailing." 202 F.3d at 1082–83.

discharge may be pleaded," but in "unusual circumstances" could be enforced by bankruptcy court injunction). Indeed, until a 1970 amendment, the Bankruptcy Act did not even contain a discharge injunction, relying entirely on the availability of the defense of discharge. The 1970 amendment adding the discharge injunction was intended to help free discharged debtors from having to defend against harassing lawsuits,[9] but nothing suggests it was intended to deprive state courts of jurisdiction to hear the defense of discharge.[10] To the contrary, Colliers made clear that except as to debts excepted from discharge on grounds of fraud or conversion, breach of fiduciary duty or personal injury claims (for which the creditor had to file a complaint to except them from discharge or they would be discharged), "the bankruptcy court's jurisdiction [to determine that a debt has been discharged] is concurrent with that of the appropriate local court." 1A COLLIER ON BANKRUPTCY

¶ 17.28A, at 1739 (14th ed.1978). And of course the Supreme Court has held that "We will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 563, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). No such intent is evident in the Code or in the relevant sections of Title 28, and none is referenced in *Gruntz*. In fact, *Gruntz* relied most heavily on a pre-Code authority decided under the short-term Frazier–Lemke Act, which contained an exclusive jurisdiction provision far broader than any generally applicable to either the Act or the Code.[11]

Because it would be such a radical departure from accepted law to deprive state courts of jurisdiction to determine whether a debt has been discharged, it makes better sense to read *Gruntz* as similarly not depriving state courts of jurisdiction to

9. Pub.L. 91–467 added §§ 14f and 17c, which for the first time in the Act specifically authorized bankruptcy courts to determine which debts had been discharged and to enter orders of discharge that enjoin creditors from any action or process to collect discharged debts. The bill was drafted by the National Bankruptcy Conference, and both the Senate and House reports included the NBC's explanatory memorandum: "Thus creditors, in particular, are informed expressly that if their claims are discharged they may not thereafter seek to obtain personal liability upon them in another court and, in fact, are enjoined from doing so. Thus, harassment lawsuits should be eliminated and the bankrupt freed of the necessity to retain legal assistance in another court to assert his discharge and to be unburdened from the effects of judgments which today are not rightfully obtained either through default or 'sewer service.'" S.Rep. 91–1173 and H.Rep. 91–1502 on Pub.L. 91–467, U.S.Code Cong. & Admin.News 1970, p. 4156.

10. "The basic thrust of the legislation was to give bankruptcy courts jurisdiction to determine the dischargeability of particular debts." 1A COLLIER ON BANKRUPTCY ¶ 14.01[4.6], at 1259 (14th ed.1978).

11. The Frazier–Lemke Act was a controversial Depression era moratorium on farm fore-

closures. To ensure that the farmer would in fact obtain that relief without litigation in state courts that might be hostile to it, the act provided that the filing of a petition "shall immediately subject the farmer and all his property ... to the exclusive jurisdiction" of the bankruptcy court. 11 U.S.C. § 203(n) (repealed), *quoted in Kalb v. Feuerstein*, 308 U.S. 433, 440–41, 60 S.Ct. 343, 84 L.Ed. 370 (1940), *cited in Gruntz*, 202 F.3d at 1079, 1080 & 1083. In contrast, neither the Bankruptcy Act nor the Bankruptcy Code vested exclusive jurisdiction *over the debtor* in bankruptcy court, but such jurisdiction was exclusive only as to the administrative case itself and as to the property of the estate. *See* 28 U.S.C. § 1334(a) & (e) (exclusive jurisdiction over "cases under title 11" and over all of the property of the debtor and of the estate); *Isaacs v. Hobbs Tie & Timber Co.*, 282 U.S. 734, 737, 51 S.Ct. 270, 75 L.Ed. 645 (1931) (under the Act, bankruptcy courts had exclusive *in rem* jurisdiction over property of the estate and over "all matters of administration"). Under the Bankruptcy Act, as distinguished from the Frazier–Lemke Act, if a suit in state court threatened to interfere with the bankruptcy court's administration of the estate, the bankruptcy court could enjoin it, "although this does not in any way reflect on the state court's jurisdiction to entertain such suit." 1 COLLIER ON BANKRUPTCY, § 2.61[2], at 327–28 (14th ed.1978).

determine the applicability of the automatic stay in the first instance, but only as denying them jurisdiction to modify the stay. The entire *Gruntz* opinion is consistent with this interpretation, as it consistently uses the term "modify" (and its derivatives "modifying" and "modification") when discussing the state court's consideration of the stay,[12] and never terms such as "determining the scope and applicability of the automatic stay" when referring to the state court action, although it did use such terms twice when referring to the bankruptcy court's "final" authority. Moreover, the opinion's heavy reliance on 28 U.S.C. § 157(b)(2)(G) as the authority for the bankruptcy court's "plenary" jurisdiction has a bearing only if the state court action is to "terminate, annul or modify the automatic stay," not if it were merely to interpret its application and exceptions. Consequently this consideration of how *Gruntz* should apply in the parallel universe of discharge litigation strongly suggests that of the possible interpretations listed above, number 3 is the most felicitous to the language of the opinion and the history of bankruptcy law, *i.e.*, state courts lack jurisdiction to modify the stay (or the discharge), but retain nonexclusive jurisdiction to determine the applicability of the stay or the discharge.

If *Gruntz* is so read, then it provides no answer to the question addressed by the Bankruptcy Court and the District Court below, and as originally posed by the three-judge panel: Does *res judicata*, collateral estoppel or *Rooker–Feldman* bind bankruptcy courts to prior state court determinations of the applicability of the automatic stay (or the discharge)? On that question *Gruntz* reflects conflicting leanings. On the one hand the basic thrust of the opinion leans heavily toward the primacy of bankruptcy courts' interpretations and applications of federal bankruptcy law, and the invalidity of any determinations by state courts that might be interpreted as interfering with such "plenary" jurisdiction. On the other hand, the opinion states that if the stay does not apply, *e.g.*, because it has been lifted, then "subsequent state decisions" are entitled to "full faith and credit" in federal courts, and "the normal rules of issue preclusion, including the *Rooker–Feldman* doctrine, apply." 202 F.3d at 1084. If that is true once an applicable stay has been lifted, then presumably it would be equally true when the stay never applied in the first place.

Absent a definitive answer to this question from *Gruntz*, since that is not the issue the *en banc* opinion purported to deal with, perhaps the lower courts in the Ninth Circuit remain bound by prior precedent that does definitively answer that question. Although the panel decisions in *Gruntz* were vacated when the Ninth Circuit elected to hear the case *en banc*,[13] which also presumably eliminated any precedential effect of cases relying on those decisions,[14] there are other precedents in the Ninth Circuit that remain in effect. In *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich)*, 229 B.R. 777 (9th Cir. BAP 1999), the Ninth Circuit Bankruptcy Appellate Panel held that state courts have jurisdiction to construe the scope of the discharge, and their judgments must be given full faith and credit in bankruptcy courts except when they construe the discharge too narrowly, because such a too-narrow judgment "may be void to the extent it offends the discharge and subject to collateral attack in federal court."[15] 229

---

12. There are at least eight times the opinion uses a derivation of "modify" when referring to the state court's action under consideration.

13. 177 F.3d 729 (9th Cir.1999).

14. *E.g., In re Dunbar*, 235 B.R. 465 (9th Cir. BAP 1999).

15. *Pavelich* held that such collateral attack would be permissible because there is "an exception to *Rooker–Feldman* ... when the state proceeding is a legal nullity and void ab initio," citing *Kalb, supra*. *Pavelich*, 229 B.R. at 783. The *Pavelich* court relied on Restatement (Second) Judgments § 12(2) for this exception to issue preclusion when the initial

B.R. at 783. More significantly, however, state courts have jurisdiction to determine "whether a particular debt is excepted from discharge, or, in bankruptcy parlance, nondischargeability," and such determinations are subject to issue preclusion. *Id.* at 784.

Assuming *Pavelich* remains good law, a debtor who is faced with a state court proceeding that is arguably stayed or discharged, and who desires an unfettered bankruptcy court determination of the issue, should seek a bankruptcy court ruling *before* the state court addresses the matter on the merits. Not only is this the clear implication of *Pavelich*, but it is also in accord with *Gruntz's* emphasis on the primacy of bankruptcy courts' applications of the Bankruptcy Code, and the availability of § 105 as a "procedural avenue to forfend state actions that are not subject to the automatic stay but that threaten the bankruptcy estate." 202 F.3d at 1087. This in effect is what the Debtor has here requested.

For these reasons, I conclude that *Gruntz* actually supports, rather than denies, this Court's authority to determine whether a criminal prosecution violates a discharge and, if so, to enjoin it under § 105. Consequently the State of Arizona's Motion to Dismiss is denied.

### Debtor Fails To Show Likelihood of Success on the Merits

■■■■ Because this is a § 105 injunction proceeding, however, Debtor bears a heavy burden of showing a likelihood of success on the merits and irreparable injury. Generally for injunctive relief the Ninth Circuit requires 1) a fair chance of success on the merits, 2) a significant threat of irreparable harm, 3) a balancing of hardships in favor of the application, and 4) the public interest weighs in favor of the injunction. *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937–38 (9th Cir.1987). But a strong showing of entitlement to relief must be made to enjoin governmental action. *Sal Tinnerello & Sons, Inc. v. Town of Stonington*, 141 F.3d 46, 52 (2nd Cir.1998). And even though *Gruntz* holds such relief is available under § 105, it certainly cautions against "unwarranted interference" in state criminal prosecutions, 202 F.3d at 1087, which also suggests the applicant bears a heavier than normal burden for injunctive relief. This Debtor fails to satisfy that burden, both as to likelihood of success on the merits and imminent irreparable harm.

To show a likelihood of success on the merits, Debtor would have to show that he would likely prevail in proving that the county prosecutor is seeking to enforce payment of a discharged debt. Unlike the Court-made exception to the § 362(b)(1) exception to the automatic stay that the Ninth Circuit eliminated in *Gruntz*, the discharge exception contains a statutory basis for the distinction between a punitive or remedial "fine, penalty or forfeiture" payable to a governmental unit and one that is "compensation for actual pecuniary loss." 11 U.S.C. § 523(a)(7). The same statute also requires bankruptcy courts to determine whether a restitution order is "for the benefit of a governmental unit" or

judgment "would substantially infringe the authority of another tribunal or agency of government." 229 B.R. at 783–84. The modified panel opinion in *Gruntz* adopted this holding and rationale, and quoted that passage from *Pavelich*. 177 F.3d at 735–36, as reported in 235 B.R. at 468 (See n. 3 supra). But closer analysis suggests that such an exception to issue preclusion may apply only in the case of a direct attack on another court's authority. The facts and holding of *Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963), suggest that the exception does not apply simply when a court makes a plausible factual finding on which its jurisdiction depends, when another court's contrary factual finding would have divested the first court of jurisdiction. Consequently *Pavelich* should probably not be read as permitting relitigation in bankruptcy courts of state courts' factual determinations as to whether an action falls within the scope of the automatic stay, or whether a debt is of the kind that is nondischargeable. Indeed, the *Pavelich* opinion itself so cautions. 229 B.R. at 784.

for the benefit of a nongovernmental victim. *Compare Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (criminal restitution order was for the benefit of the state, not compensation for the victim, so it was nondischargeable pursuant to § 523(a)(7)), *with In re Towers,* 162 F.3d 952 (7th Cir.1998) (*rehearing denied* 1999) (civil restitution order was for the benefit of victims and so was dischargeable notwithstanding *Kelly* and § 523(a)(7)). So it is certainly possible that the Debtor could here prove that, if convicted and a monetary sanction were imposed, the punishment was in fact compensation for pecuniary loss, or was for the benefit of the victim, and therefore subject to the discharge.

But Debtor's likelihood of success on that ground is substantially weakened by Tischler's avowal that he has waived any claim for restitution. This is not necessarily determinative, because it is presumably not binding on the prosecutor or the sentencing court, but it is sufficient to defeat Debtor's showing of a substantial likelihood of proving that the ultimate remedy, or even the purpose of the prosecution, is to obtain compensation for pecuniary loss.

Nor does Debtor fare better in showing irreparable injury. Until the prosecution is concluded, Debtor is convicted and a sanction imposed that violates the discharge injunction, Debtor does not appear able to demonstrate any legally cognizable injury from the alleged discharge violation. True, he may well suffer injury from the prosecution, such as by loss of a realtor's license or even deportation, but these injuries do not necessarily flow from the wrong sought to be enjoined, the violation of the discharge by using the criminal prosecution to collect a debt. These injuries will occur to the same extent if the prosecution is an entirely proper exercise of the State's police power to punish theft and embezzlement.

The Supreme Court has made clear that "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971). In the context of a prosecution that debtor alleges is intended to enforce payment of a discharged debt, this *Younger* principle implies that either the threat or the prosecution itself must violate the discharge. This is certainly conceivable, because since the 1970 enactment of the discharge injunction debtors have a federally protected right to be free from threatened collection actions, and it evidences Congress's conclusion that the availability of the defense of discharge is often insufficient protection. But to survive *Younger* abstention on such basis means that either the threat or the prosecution itself must violate the discharge injunction, *i.e.,* by directly threatening to enforce payment of a discharged debt. Here, the prosecution of the Debtor does not immediately violate the discharge injunction, since as discussed above it is not at all clear, or even likely, that a restitution order is either a fundamental purpose of the prosecution or a likely sanction in the event of conviction. Absent a circumstance where the mere threat of prosecution itself violates the debtor's federally protected rights, akin to the situation in *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), bankruptcy courts should heed *Younger* and abstain, "to permit state courts to try state cases free from interference by federal courts." *Younger,* 401 U.S. at 43, 91 S.Ct. 746.

For these reasons, Debtor's application for preliminary injunction is denied, without prejudice, however, to a renewed application in light of subsequent facts that increase Debtor's likelihood of ultimate success or his irreparable injury flowing

from a threatened violation of the discharge.