EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José L. Morales Pérez<br><br>Peticionario<br><br>v.<br><br>Policía de Puerto Rico<br><br>Recurrida | Certiorari<br><br>2018 TSPR 48<br><br>200 DPR \_\_\_\_ |

Número del Caso: CC-2018-181

Fecha: 2 de abril de 2018

Tribunal de Apelaciones:

      Región Judicial de San Juan-Caguas

Abogado de la parte peticionaria:

      Lcdo. Ervin Sierra Torres

Oficina del Procurador General:

      Lcdo. Luis R. Román Negrón
      Procurador General

Materia: Resolución del Tribunal con Voto particular de conformidad y Voto particular disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José L. Morales Pérez

    Peticionario

        v.                      CC-2018-0181         *Certiorari*

Policía de Puerto Rico

    Recurrida

RESOLUCIÓN

En San Juan, Puerto Rico, a 2 de abril de 2018.

Examinada la petición *de Certiorari* presentada en el caso de referencia, se provee no ha lugar.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió un Voto Particular de Conformidad al que se unen la Juez Asociada señora Pabón Charneco y los Jueces Asociados señores Kolthoff Caraballo y Feliberti Cintrón. El Juez Asociado señor Estrella Martínez hace constar la siguiente expresión:

El Juez Asociado señor Estrella Martínez disiente por los mismos fundamentos expuestos en sus votos particulares disidentes emitidos en Vera González v. ELA, res. el 19 de marzo de 2018, 2018 TSPR ___; Narváez Cortés v. Estado Libre Asociado de Puerto Rico, *et al.*, res. el 21 de febrero de 2018, 2018 TSPR 32; ELA v. El Ojo de Agua Development, Inc., res. el 2 de febrero de 2018, 2018 TSPR 12.

El Juez Asociado señor Colón Pérez emitió un Voto Particular Disidente al que se unen la Jueza Presidenta Oronoz Rodríguez y la Juez Asociada señora Rodríguez Rodríguez.


                          Juan Ernesto Dávila Rivera
                          Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José L. Morales Pérez

    Peticionario

       v.

                         CC-2018-0181

Policía de Puerto Rico

      Recurrido

Voto particular de conformidad emitido por el Juez Asociado señor MARTÍNEZ TORRES al que se unieron la Jueza Asociada señora PABÓN CHARNECO y los Jueces Asociados señores KOLTHOFF CARABALLO y FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 2 de abril de 2018.

Estoy conforme con que se emita una resolución que provea no ha lugar al recurso de certiorari que tenemos ante nuestra consideración. Del *Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA)* infra, y de las disposiciones aplicables de la Ley de Quiebras federal, infra, surge claramente que cualquier reclamación monetaria que haya comenzado o hubiera podido comenzar contra el gobierno antes de que este presentara una petición de quiebra, está automáticamente paralizada hasta que culmine el procedimiento de quiebra o hasta que el tribunal federal levante la paralización parcial o

totalmente. Todo el caso está paralizado a menos que aplique una de las excepciones a la paralización automática de las que menciona la Sec. 362(b) de la Ley de Quiebras federal, infra.

I

El Superintendente de la Policía de Puerto Rico suspendió sumariamente al Sr. José L. Morales Pérez de su cargo como agente de la Uniformada. Ante esto, el señor Morales Pérez presentó una apelación ante la Comisión de Investigación, Procesamiento y Apelación (CIPA), en la cual solicitó que se le reinstalara a su puesto y se le pagara el sueldo y los beneficios dejados de percibir. La CIPA emitió una resolución en la cual indicó que el caso estaba paralizado según lo dispuesto por el Título III de PROMESA, infra.

Ante esto, el señor Morales Pérez solicitó la revisión judicial. El Tribunal de Apelaciones confirmó la determinación de la CIPA, ya que también entendió que el caso está paralizado. En lugar de acudir al tribunal federal para que ese foro autorizara que se viera la reclamación en la CIPA, el señor Morales Pérez acudió ante este foro mediante un recurso de certiorari.

II

Con el fin de lidiar con la situación económica de Puerto Rico, el Congreso de Estados Unidos aprobó PROMESA, 48 USCA sec. 2101 et seq. La aprobación de esta legislación ocurrió en virtud del poder que la Cláusula Territorial de la Constitución de Estados Unidos, Const. EE. UU., Art. IV, Sec. 3, otorga al Congreso sobre el gobierno de los territorios.

El Título III de PROMESA establece el procedimiento para que el gobierno de Puerto Rico pueda presentar una petición de quiebra. Por esto, incorporó ciertas disposiciones de la Ley de Quiebras federal. 48 USCA sec. 2161. La legislación federal de quiebras se aprobó con el propósito de ofrecer al deudor una herramienta que le brinde solución a sus problemas financieros a largo plazo y le permita comenzar de nuevo, entre otras cosas. Puerto Rico v. Franklin California Tax-Free Trust, 136 S. Ct 1938, 1950 (2016); Marrama v. Citizens Bank of Mass., 549 US 365, 367 (2007). Entre las disposiciones de la Ley de Quiebras federal que se incorporaron a PROMESA se encuentra la relacionada a la paralización automática, 11 USCA. sec. 362.

La paralización automática es una de las protecciones básicas que le ofrece el procedimiento de quiebras al deudor. Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot., 474 US 494, 503 (1986). Tiene como propósito proteger al deudor de reclamaciones del acreedor y, además, proteger a los acreedores de reclamaciones de otros acreedores. Collier on Bankruptcy, sec. 362.03 (Alan N. Resnick & Henry H. Sommer eds., 16th ed.). En otras palabras, busca preservar el caudal del deudor para que se pueda llevar un proceso ordenado de reorganización. Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot., supra, pág. 503.

El efecto de la paralización automática es detener los pleitos que involucren reclamaciones monetarias y que se estén llevando contra el deudor al momento de radicar la petición de quiebra o aquellas que hayan podido comenzar antes de la presentación de la petición de quiebra. 11 USCA sec. 362(a).

De otro modo, las reclamaciones que prosiguieran su curso en los tribunales tendrían una preferencia que la ley no les concede, pues cobrarían antes que los demás deudores y, a diferencia de estos, podrían resarcir su deuda de forma íntegra. Todo ello empequeñecería indebidamente el caudal del quebrado, en perjuicio suyo y de los demás acreedores.

Para evitar esto, la paralización opera de forma automática en los pleitos, no importa la causa de la reclamación monetaria. Por lo tanto, los tribunales estatales quedan privados de jurisdicción automáticamente y no pueden continuar atendiendo los casos en los que exista una reclamación monetaria contra el deudor que presentó la petición de quiebra. Marrero Rosado v. Marrero Rosado, 178 DPR 476, 490-491 (2010); In re Jamo, 283 F.3d 392, 398 (1er Cir. 2002).

Por su parte, la Sec. 362(b), 11 USCA 362(b), menciona una serie de excepciones a la paralización automática. Esta permanecerá hasta que culmine el proceso o hasta que el tribunal federal la levante parcial o totalmente, de acuerdo al procedimiento establecido en la Sec. 362(d) de la Ley de Quiebras federal, 11 USCA sec. 362(d). In re Jamo, supra, pág. 398. Véase también In re Sonnax Indus., 907 F.2d 1280, 1285-1286 (2do Cir. 1990); Brigade Leveraged Capital Structures Fund Ltd. v. García-Padilla, 217 F. Supp. 3d 508, 518 (D. P.R. 2016). Cabe destacar que siempre que una controversia contenga una reclamación monetaria y otra que no lo sea, todas las etapas del caso quedan paralizadas automáticamente al presentarse la petición de quiebra, ya que no caen dentro de las excepciones a la paralización. En caso de que las partes entiendan que se

debe levantar la paralización, deberán acudir al tribunal federal para que ese foro levante parcial o totalmente la paralización. Véase, In re Sonnax Indus., supra, pág. 1285. Véase también Cain v. Rackspace U.S., Inc., CV. No. SA-14-MC-333-XR, 2014 WL 3495715 (W.D. Tex. 2014).

Asimismo, el propio texto del Título III de PROMESA, 48 USCA sec. 2164, indica que "[e]l inicio de un caso bajo este título constituye una orden de suspensión" (traducción oficial). De lo contrario, el caudal del deudor disminuiría antes de que el tribunal de quiebras evalúe la condición económica del deudor y su plan de pago. Todo esto derrotaría el propósito de proveer un proceso ordenado y uniforme de reorganización de las finanzas del deudor.

La controversia que tenemos ante nuestra consideración es sobre reinstalación y pago del sueldo y beneficios dejados de obtener a causa del despido. El cobro del salario dejado de obtener constituye una reclamación monetaria, ya que el dinero para pagarlos, de no prevalecer la postura del gobierno, saldría del patrimonio del Estado. Del texto de PROMESA y de la Ley de Quiebras Federal no surge una excepción a la paralización automática de una reclamación monetaria contra el Estado por el pago de sueldo y beneficios dejados de obtener por el despido. El hecho de que una reclamación involucre una reclamación monetaria y otra que no lo es tampoco constituye una excepción a la paralización automática. Por consiguiente, este caso está paralizado totalmente hasta que culmine el caso de quiebra o el tribunal federal levante la paralización de

este caso, en todo o en parte, de acuerdo al procedimiento de la Sec. 362(d), supra.

III

Los tribunales estatales están facultados para verificar inicialmente si el caso está paralizado. Lacourt Martínez et al. v. Jta. Lib. et al., 2017 TSPR 144, 198 DPR ___ (2017); In re Mid-City Parking, Inc., 332 B.R. 798, 803 (N.D. Ill. 2005). Sin embargo, no nos compete a nosotros ni a ningún tribunal estatal levantar la paralización automática parcial o totalmente en casos que claramente están paralizados. Una vez se verifica que el caso está paralizado, nuestra intervención concluye. En la estructura de un gobierno federal, los tribunales federales tienen jurisdicción exclusiva para atender ciertos temas. La Constitución de Estados Unidos delegó en el Congreso la facultad de adoptar las leyes uniformes de quiebras en toda la nación, Const. EE. UU., Art. I, Sec. 8, por lo que ocupó el campo en esta materia. En virtud de esta disposición, el Congreso de los Estados Unidos creó un tribunal especializado en quiebras y le otorgó jurisdicción original y exclusiva para atender los casos de quiebras. 28 USCA 1334(a). En fin, el tribunal federal es el único foro con jurisdicción para levantar la paralización durante un proceso de quiebras.

La falta de jurisdicción sobre la materia puede considerarse a solicitud de parte o por el tribunal *motu proprio* en cualquiera de las etapas que se encuentre el caso y deberán ser resueltas de manera preferente. Rosario Domínguez et al. v. ELA et al., 2017 TSPR 90, pág. 4, 198 DPR ___, ___ (2017). Cuando un tribunal concluye que no tiene jurisdicción para

atender el caso, solo está facultado para hacer la determinación de falta de jurisdicción. <u>Pérez López y otros v. CFSE</u>, 189 DPR 877, 883 (2013). Cualquier otra intervención nuestra en esta etapa sería nula. <u>Rosario Domínguez v. ELA</u>, <u>supra</u>, pág. 4.

No existe duda de que el foro apelativo intermedio actuó correctamente al confirmar la determinación del foro administrativo de que este caso está paralizado. Como ya se mencionó, las partes, si entienden que el pleito no debe seguir paralizado en todo o en parte, deben acudir al tribunal federal para solicitar que se levante la paralización parcial o totalmente. Así ha ocurrido en casos similares, en los que el tribunal federal ha modificado la paralización para permitir que se ventile la reclamación que no es monetaria, referente al reclamo de reinstalación en el empleo. Véase, <u>In re: The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico, et al.</u>, No. 17 BK 3283-LTS (Bankr. D. PR. Aug. 11, 2017).


                                        RAFAEL L. MARTÍNEZ TORRES
                                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José L. Morales Pérez

    Peticionario

       v.

Policía de Puerto Rico            CC-2018-0181   *Certiorari*

    Recurrida

Voto Particular Disidente emitido por el Juez Asociado señor COLÓN PÉREZ al que se unen la Jueza Presidenta ORONOZ RODRÍGUEZ y la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ.

En San Juan, Puerto Rico a 2 de abril de 2018.

Por entender que el presente caso -- uno en el que, producto de un despido, cierto empleado reclama la reinstalación en el empleo, más los haberes dejados de percibir -- no está paralizado en su totalidad por el proceso de quiebra bajo el Título III de la *Puerto Rico Oversight, Management, and Economic Stability Act* (PROMESA), 48 USC sec. 2101 *et seq.*, disentimos del curso de acción seguido por una mayoría de este Tribunal en el día de hoy. Veamos.

I.

El 24 de junio de 2016, el entonces Superintendente de la Policía de Puerto Rico, José L. Caldero López, suspendió sumariamente al señor José L. Morales Pérez de su cargo como agente de la Uniformada. Luego de los

trámites procesales correspondientes, dicha sanción fue confirmada mediante *Resolución Final*.

Así las cosas, el 20 de marzo de 2017 el señor Morales Pérez presentó una apelación ante la Comisión de Investigación, Procesamiento y Apelación (CIPA), en la cual solicitó que se le reinstalara en su puesto de carrera y reclamó el pago de salario y beneficios dejados de percibir. A dicha solicitud, la Policía de Puerto Rico se opuso.

Pendiente de resolverse las controversias ante su consideración, el 12 de junio de 2017 la CIPA emitió una *Resolución* mediante la cual ordenó la paralización de los procedimientos ante dicho foro administrativo. Ello, en virtud de lo dispuesto en el Título III de la Ley PROMESA, *supra*.

Inconforme con tal proceder, el señor Morales Pérez presentó un recurso de revisión ante el Tribunal de Apelaciones. En el mismo alegó que la CIPA erró al decretar la paralización del presente caso al amparo de la Ley PROMESA, *supra*.

Examinados los planteamientos del señor Morales Pérez, el foro apelativo intermedio emitió una *Sentencia* mediante la cual confirmó la determinación de la CIPA, por entender que el presente caso estaba paralizado en virtud de lo dispuesto en el Título III de la Ley PROMESA, *supra*, pues el resultado al que se pudiese llegar en el mismo implicaba un potencial desembolso de fondos públicos. Concluyó que, para ventilar la totalidad de sus reclamos, el señor Morales

Pérez tendría que esperar a que culminase el proceso de quiebra al amparo de la Ley PROMESA, *supra*, o que se levante la paralización automática para este asunto. No conforme, el señor Morales Pérez solicitó al foro intermedio la reconsideración de su dictamen, pero dicha solicitud fue declarada *no ha lugar*.

Insatisfecho con la determinación del foro apelativo intermedio, el señor Morales Pérez presentó una petición de *certiorari* ante este Tribunal. En la misma sostiene que el Tribunal de Apelaciones erró al confirmar la decisión de la CIPA y, en consecuencia, al mantener paralizados los procedimientos en el presente caso, ello en virtud del Título III de PROMESA, *supra*. En su petición de *certiorari*, el señor Morales Pérez argumenta que, contrario a lo decidido por el Tribunal de Apelaciones, en el caso ante nos, la continuación de los procedimientos ante la CIPA no tiene el efecto directo de producir un desembolso monetario en contra del ELA toda vez que puede dilucidarse el asunto referente a la reinstalación y, de determinarse que la misma procede, el Estado podrá en ese momento hacer su planteamiento de paralización en cuanto a la reclamación de los haberes dejados de percibir. A juicio nuestro, le asiste la razón al señor Morales Pérez. Nos explicamos.

## II.

Como es sabido, la Comisión de Investigación, Procesamiento y Apelación (CIPA) es el cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funcionarios públicos de la Rama

Ejecutiva o municipales con capacidad para efectuar arrestos, cuando a esto o a éstas se les haya impuesto alguna medida disciplinaria por violar los reglamentos que les rigen. Art. 2, Ley Núm. 32 de 22 de Mayo de 1972, 1 LPRA sec. 172; *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606 (2016); *González y otros v. Administración de Corrección*, 175 DPR 598 (2009); *Arroyo v. Policía de Puerto Rico*, 143 DPR 265 (1997).

A pesar de ser un cuerpo apelativo, la vista ante la CIPA es una especie de juicio *de novo* donde dicho organismo tiene la oportunidad de escuchar nuevamente toda la prueba presentada ante el Superintendente de la Policía y otorgarle el valor probatorio que a su juicio merezca la misma. Así pues, la agencia puede llegar a determinaciones de hecho o conclusiones de derecho diferentes a las emitidas por el Superintendente. *Torres Rivera v. Policía de Puerto Rico*, *supra*; *Ramírez v. Policía de Puerto Rico*, 158 DPR 320 (2002); *Arocho v. Policía de Puerto Rico*, 144 DPR 765 (1998). Celebrada la referida vista, la CIPA puede confirmar, revocar o modificar la determinación o actuación apelada, o podrá imponer cualquier sanción que la autoridad facultada para sancionar al funcionario hubiera podido imponer. 1 LPRA sec. 172; *Torres Rivera v. Policía de Puerto Rico*, *supra*; *Ramírez v. Policía de Puerto Rico*, *supra*; *Arocho v. Policía de Puerto Rico*, *supra*.

Las decisiones de la CIPA son finales y obligatorias para las partes, sujetas únicamente a revisión ante los tribunales. Ello pues, "la vista que se celebra ante la

C.I.P.A. es propiamente una vista formal, porque en ella se ventilan de manera definitiva, a nivel administrativo, todos los derechos del empleado". *Ramírez v. Policía de Puerto Rico*, *supra*, pág. 333.

III.

De otra parte, y por resultar en extremo importante para la correcta disposición del caso de marras, conviene recordar que el Congreso de los Estados Unidos de América aprobó la Ley PROMESA, *supra*, con el propósito de establecer los contornos para la regulación de la deuda pública de Puerto Rico. Para adelantar tales propósitos, la referida disposición legal estableció el procedimiento que debe seguir el ELA para presentar una petición de quiebra.

Sobre ese particular, la sección 301 (a) del Título III de PROMESA, *supra*, incorporó a la referida disposición legal las secciones 362 y 922 del Título II del Código de Quiebras de los Estados Unidos de América, las cuales traen consigo la paralización automática de los pleitos que se ventilan contra un deudor al momento en que se radica la referida petición de quiebra; hecho que se consumó en nuestro país el pasado 3 de mayo de 2017, cuando la Junta de Supervisión y Administración Fiscal, en representación del ELA, presentó ante la Corte de Distrito para el Distrito de Puerto Rico, una petición de quiebra al amparo de la sección 301(a) del Título III de PROMESA, *supra*.

La referida paralización automática es una de las protecciones más básicas que los legisladores estadounidenses instituyeron en el Código de Quiebras para

los deudores que se acogen a éste. *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 US 494, 503 (1986); *Soares v. Brockton Credit Union*, 107 F.3d 969, 975 (1er Cir. 1997). *Véase*, además, *In re Crespo Torres*, 532 B.R. 195 (2015). En lo que finaliza el pleito de quiebra, la misma impide, entre otras cosas, el comienzo o la continuación de cualquier proceso judicial, administrativo o de otra índole que fue o pudo haber sido interpuesto contra el deudor, o para ejercitar cualquier acción cuyo derecho nació antes de que se iniciara el procedimiento de quiebra. 11 USC sec. 362; *Marrero Rosado v. Marrero Rosado*, 168 DPR 474, 490-491 (2006). *Véase*, además, *In re Coupel*, 556 B.R. 746 (2016).

**Ahora bien, es norma reiterada que tanto los tribunales federales como los estatales tenemos la facultad inicial de interpretar la paralización y su aplicabilidad a los casos.** *Rafael Lacourt Martínez v. Junta de Libertad Bajo Palabra*, 2017 TSPR 144, 198 DPR ___ (2017); *Laboratorio Clínico Irizarry v. Departamento de Salud*, 2017 TSPR 145, 198 DPR ___ (2017); *In re Mid-City Parking, Inc.*, 332 B.R. 798, 803 (N.D. III. Ill. 2005) ("Nonbankruptcy forums in both the state and federal systems have jurisdiction to at least initially determine whether pending litigation is stayed."). *Véanse*, además, *In re Lenke*, 249 B.R. 1 (10) (D. Az. 2000); *In re Singleton*, 230 B.R. 533, 538-539 (6th Cir. 1999). **Realizado dicho análisis, habrá escenarios en donde procederá la paralización automática, y habrá escenarios donde no procederá.**

Así, por ejemplo, en *Rafael Lacourt Martínez v. Junta de Libertad Bajo Palabra*, *supra*, y en *Laboratorio Clínico Irizarry v. Departamento de Salud*, *supra*, rechazamos el que se paralizaran pleitos ante la consideración de los tribunales que no involucraran una reclamación monetaria. El presente caso es, en un extremo, algo parecido.

Al respecto, conviene señalar que **en un caso muy similar al que nos ocupa** -- donde, producto de un despido, estaba en controversia la reinstalación de cierta persona en su empleo, más la reclamación por los haberes dejados de percibir -- la Jueza federal Laura Taylor Swain determinó que procedía la continuación del proceso apelativo en cuanto a la dilucidación de si era procedente o no la reinstalación en el empleo allí solicitada. *Véase Memorandum Order Granting in Part Motion of Keila Robles-Figueroa For Relief from Automatic Stay* (No. 17 BK 3283, Docket Entry No. 647). En particular, la Jueza expresó lo siguiente:

> Allowing the Appeal to proceed to a determination as to whether Movant in entitled to reinstatement while maintaining the stay as to any monetary claims against the Debtors would not interfere materially, if at all, with the Title III case and would permit efficient resolution of the issue raised in the Appeal. Íd., pág. 3.

Es, precisamente, a la luz de la normativa antes expuesta que procedemos a disponer de las controversias que nos ocupan.

## IV.

Como mencionamos anteriormente, en el presente caso el señor Morales Pérez, tras ser destituido de su puesto como

agente de la Policía de Puerto Rico, solicitó ante la CIPA ser reinstalado en su empleo y reclamó el pago de los haberes dejados de percibir desde la fecha de su despido. Luego de varios incidentes procesales no necesarios aquí pormenorizar, y pendiente aún de resolver el caso ante su consideración, la CIPA ordenó la paralización de los procedimientos ante dicho foro administrativo, ello en virtud de lo dispuesto en el Título III de PROMESA, *supra*. Dicho dictamen fue confirmado por el Tribunal de Apelaciones. No conforme, el señor Morales Pérez recurre ante nos solicitando la revocación de la Sentencia emitida por el foro apelativo intermedio. Argumenta que la continuación de los procedimientos ante la CIPA no tiene el efecto directo de producir un desembolso monetario en contra del ELA, toda vez que puede dilucidarse el asunto referente a la reinstalación y, de determinarse que la misma procede, el Estado podrá en ese momento hacer su planteamiento en cuanto a la reclamación de los haberes dejados de percibir. Como ya adelantamos, tiene razón el señor Morales Pérez.

Y es que, de conformidad con la normativa antes expuesta, si bien el pleito ante nos incluye una reclamación monetaria en contra del ELA (reclamo de haberes dejados de percibir), la cual está paralizada en virtud de PROMESA, *supra*, el proceso administrativo ante la CIPA en lo relacionado a determinar si el señor Morales Pérez tiene o no derecho a ser reinstalado en su puesto de carrera en la Policía de Puerto Rico puede continuar. El pedido de

reinstalación que hace el señor Morales Pérez no constituye una reclamación monetaria a la luz de PROMESA, *supra*.

A tono con lo anterior, somos, pues, de la opinión que en el presente caso procedía permitir la continuación del proceso ante la CIPA a los únicos fines de determinar si procedía o no la reinstalación del señor Morales Pérez en su puesto de trabajo. Respecto a la reclamación por el pago de los haberes dejados de percibir, colegimos que la misma está paralizada en virtud del Título III de PROMESA, *supra*.

V.

Siendo ello así, por los fundamentos antes expuestos, expediríamos el recurso de *certiorari*, revocaríamos la Sentencia emitida por el Tribunal de Apelaciones y permitiríamos la continuación de los procedimientos ante la CIPA a los únicos fines de dilucidar si corresponde o no reinstalar al señor Morales Pérez en su empleo.

                                        Ángel Colón Pérez
                                        Juez Asociado