**In re Cecil F. MOTLEY & Ethelyn Motley, Debtors.**

**Cecil F. Motley et ux., Plaintiffs,**

**v.**

**Equity Title Co., et al., Defendants.**

**Bankruptcy No. LA 98–53444–SB.**
**Adversary No. LA 99–03021–SB.**

United States Bankruptcy Court, C.D. California.

Oct. 5, 2001.

Matthew Norton, Matthew Norton & Associates, Long Beach, CA.

Robert L. Kinkle, Law Offices of Robert L. Kinkle, Long Beach, CA, for debtors.

Louis E. Kempinsky, Luce, Forward, Hamilton & Scripps, LLP, Los Angeles, CA.

Paula Scotland, the Buckley Firm, Mission Viejo, CA.

## AMENDED OPINION ON SUMMARY JUDGMENT MOTIONS

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. Introduction

This case involves a deposit that the debtors made with a title insurance company to induce the insurer to issue a title insurance policy. The title insurance was issued for real estate that the debtors sold after receiving a chapter 7 discharge, and the deposit was made to avert an exception in the title insurance policy for a post-discharge state court judgment based on the debtors' prepetition guarantee of a corporate debt. The debtors now seek a refund of the deposit.

Even though the title insurance company has paid the discharged judgment, the court finds that the insurer has no indemnity claim against the debtors, and that the debtors are entitled to a return of the deposit.

### II. Facts

The debtors Cecil F. Motley and Ethelyn Motley filed a joint chapter 11 bankruptcy case on May 23, 1994. After unsuccessful efforts to formulate a viable reorganization plan, the case was converted to a case under chapter 7 on March 26, 1996, and the chapter 7 trustee filed a no-asset report in due course. The debtors received a discharge on August 14, 1996, and the case was closed shortly thereafter. The debtors subsequently filed the present chapter 11 case on October 26, 1998.

This litigation arises out of a four-year lease signed on June 5, 1980 between La Mancha/Schurgin Corp. as landlord and F.K. Hubbard & Associates as tenant for business property in Redondo Beach. The lease was extended from time to time, with adjustments in rent.

Both the landlord and the tenant changed over time. Pacific Property acquired title to the property and became the landlord in 1981. N.W. Ayer & Son, Inc. acquired the leasehold interest in 1983. Digital Radio Corp. became a successor tenant in 1984. Finally, Dirad Defense Systems succeeded to the leasehold for the times relevant to this case.

This litigation arises out of a guaranty that the debtors signed in 1984 to guarantee the rent owing when Digital Radio Corp. succeeded to the leasehold. This guaranty also applied to Dirad Defense Systems when it became the tenant.

In July, 1997 Dirad ceased paying rent. Pacific Property brought an action on February 20, 1998 in state court against Dirad for unlawful detainer and for unpaid rent (including interest). Notwithstanding the debtors' intervening chapter 7 discharge, Pacific Property also sued them in the unlawful detainer action. Pacific Property obtained a judgment against all three defendants (Dirad and the joint debtors) for possession and for past due rent in the amount of $92,054.89. Pacific Property duly recorded an abstract of this judgment in Los Angeles County, which became a lien against the debtors' residence in Palos Verdes.

Shortly thereafter, the debtors sold their residence to Katz & Robillard, whose lender required a title insurance policy showing that its deed of trust was in first position. Because of the recorded judgment. First American Title Insurance Co. insisted on the satisfaction of two condi-

tions for its issuance of a title insurance policy: first, an indemnity agreement from the debtors; and second, their deposit of $96,266.63 in cash with First American, to cover the judgment and accrued interest thereon. The indemnity agreement, dated September 15, 1998, provided, "If such judgment is not fully satisfied within 120 days from the date of this agreement, First American/Equity Title will pay said judgment and refund the balance of the deposit, if any, to the indemnitor."

Shortly after the closing of the sale transaction Pacific Property made demand on Katz & Robillard for payment of its judgment. Katz & Robillard in turn invoked the title insurance issued by First American. In response, First American paid $98,082.47 (the judgment amount plus interest to the date of payment) to Pacific Property from its own funds, and made claim to the fund that it was holding from the debtors. In return for the check, Pacific Property gave First American an acknowledgment of full satisfaction of the judgment. The deposit by the debtors remains in a bank deposit trust account.

The debtors promptly brought a motion in state court to vacate the judgment against them on the grounds that it violated their discharge injunction in their prior bankruptcy case. The state trial court denied this motion on October 20, 1998, and six days later the debtors filed this bankruptcy case.

### III. Analysis

Debtors argue that First American is not entitled to apply the deposited funds in reimbursement for paying the Pacific Properties claim, because that claim had been discharged in the prior bankruptcy case. Debtors further argue that the

funds are estate property to which they are entitled as debtors in possession in the present bankruptcy case.

### A. Discharge of the Guaranty

■ The Motleys' personal guarantee is clearly within the scope of the Bankruptcy Code's definitions of "claim" in § 101(5) and "debt" in § 101(12). The guaranty was given in 1984, nearly ten years before the Motleys filed their first bankruptcy case. Thus it was a prepetition obligation that was discharged in their prior bankruptcy case.

■ Section 101(12)[1] defines "debt" as a "liability on a claim." "Claim" is defined broadly under § 101(5) to include virtually any "right to payment." A personal guarantee is within the scope of the statutory definition of a claim. *Travelers Ins. Co. v. Cambridge Meridian Group (In re Erin Food Servs.* ), 980 F.2d 792, 796 (1st Cir. 1992).

Similarly, a number of reported decisions have upheld the discharge of personal guaranties in the face of challenges under § 523, which provides that certain kinds of debts are nondischargeable. *See, e.g., ITT Commercial Fin. v. Osborne (In re Osborne),* 257 B.R. 14, 24 (Bankr. C.D.Cal.2000) (discharging a debt based on the guarantee of a corporate loan where creditor had knowledge of falsity of financial statement that debtor provided); *First Am. Bank v. Bodenstein (In re Bodenstein* ), 168 B.R. 23, 28–35 (Bankr.E.D.N.Y. 1994) (rejecting both § 523 and § 727 challenges to discharge of personal guaranty); *Worthen Bank & Trust Co. v. Smith (In re Smith),* 120 B.R. 986, 989–90 (Bankr. E.D.Ark.1990) (discharging debt based on personal guaranty of corporate debt be-

---

**1.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (West 2001)

and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

cause the creditor failed to prove the necessary elements under § 523(a)(2)); *United States v. Perea (In re Perea)*, 89 B.R. 128, 137 (Bankr.D.Colo.1988) (finding debt on joint guaranty dischargeable as to wife, but nondischargeable as to husband under § 523(a)(2)).

It does not matter that the rent on which the unlawful detainer action was based accrued after the discharge was entered and the case was closed. At the time that the rent accrued the guaranty was gone. The United States Supreme Court has stated: "a bankruptcy discharge extinguishes ... an action against the debtor *in personam....*" *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991). Thus there was no guaranty when Dirad defaulted on its rent obligations and Pacific Properties brought its unlawful detainer action.

The discharge injunction[2] provision relevant to this case is § 524(a)(2), which provides that a bankruptcy discharge "operates as an injunction against ... an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived...." *See Molloy v. Primus Automotive Fin. Servs.*, 247 B.R. 804, 815 (C.D.Cal.2000).

■ The discharge injunction is permanent. It survives the bankruptcy case, and applies forever with respect to every debt that is discharged. The Senate Report explains the impact of the injunction:

> The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts. This paragraph ... cover[s] any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives, or employers, harassment, threats of repossession and the like.

S. Rep. No. 95–989, at 182–83 (1978), U.S.Code Cong. & Admin.News 1978, at 5787, 5866.

■ Like the automatic stay, the discharge injunction issues from the authority of the bankruptcy court. Bankruptcy court orders are not subject to collateral attack in other courts. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313, 115 S.Ct. 1493, 1501, 131 L.Ed.2d 403 (1995) (§ 105 injunction issued by bankruptcy court is not subject to attack in federal district court except on appeal of the bankruptcy court order); *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1082 (9th Cir.2000) ("The automatic stay is an injunction issuing from the authority of the bankruptcy court, and bankruptcy court orders are not subject to collateral attack in other courts.") Thus the state court had no power to interfere with the discharge of debtors' guaranty in their prior bankruptcy case.

**B. Violation of the Discharge Injunction**

■ In prosecuting the unlawful detainer action against the debtors and obtaining a judgment against them, Pacific Properties violated the discharge injunction. Pacific Properties had no right to bring an action against the debtors in its state court action.

---

**2.** The filing of a bankruptcy case imposes an automatic stay on virtually all creditor debt collection activities. *See* § 362(a). However, the automatic stay does not last indefinitely. In a chapter 7 case for an individual, the automatic stay terminates when a discharge is granted or denied. In this case the discharge was granted on March 9, 1998. Upon the grant of a discharge, the automatic stay is replaced with the discharge injunction provided by § 524(a).

■ Under Ninth Circuit law, any creditor collection action that violates the automatic stay or the discharge injunction is void. *See generally Gruntz*, 202 F.3d at 1082. Likewise, any judicial proceeding that violates the automatic stay or the discharge injunction is void. *See generally id.; Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992). Thus the state court had no jurisdiction to hold the debtors accountable for their personal guarantee.

■ Furthermore, the debtors had no obligation to defend the state court action that violated their discharge injunction. Insofar as they were named as parties, and insofar as the judgment purported to bind them, it was entirely void and a nullity. Interpreting more limited statutory language in a prior bankruptcy law,[3] the United States Supreme Court stated:

> Congress, because of its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation ... render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally.

*Kalb v. Feuerstein*, 308 U.S. 433, 438–39, 60 S.Ct. 343, 346, 84 L.Ed. 370 (1940) (holding that state courts had no power to conduct foreclosure proceedings with respect to property of the debtor without consent of bankruptcy court where farmer's reorganization case was pending, even though there was no automatic stay at the time); *see also Contractors' State License Bd. v. Dunbar (In re Dunbar)*, 245 F.3d 1058, 1063 (9th Cir.2001) ("actions taken in violation of the automatic stay are void *ab initio*.")

The same reasoning applies to the discharge injunction. The discharge injunction is much more specific than the Bankruptcy Act provisions that the Supreme Court found in *Kalb* to prevent a state court foreclosure action. The discharge injunction is just as much binding on state courts as the automatic stay that the Ninth Circuit found in *Gruntz* to permit collateral attack on an inconsistent state court action.

■ It does not matter for these purposes whether Pacific Properties was given notice of the prior bankruptcy case. Because the chapter 7 case was a no-asset case, all of the debts were discharged, whether or not the creditors were notified. *See In re Beezley*, 994 F.2d 1433, 1434 (9th Cir.1993) (in no-asset case, debt owing to creditor omitted from debtor's schedules is discharged unless it is of a type specified in § 523(a)(2), (4) or (6)). If Pacific Properties lacked notice of the bankruptcy case, their lack of notice is chiefly a defense to punitive damages to which they might otherwise be exposed under § 362(h).

## C. The Indemnity Agreement

The difficult issue in this case is how to treat the indemnity agreement between the debtors and First American. Under this agreement, the debtors purported to bind themselves to "satisfy" the discharged debt to Pacific Properties within 120 days, on pain of losing the funds that they deposited with American Title. American Title contends that the debtors failed to satisfy this condition, and that in

---

**3.** *See* Bankruptcy Act of 1898, § 75 (repealed 1938). In 1933 the Frazier–Lemke Act added § 75 to the Bankruptcy Act of 1898 to protect farmers who were losing their farms during the Great Depression. This section was repealed in 1938 by the Chandler Act, which completely revised the reorganization provisions of the Bankruptcy Act that were added during the Great Depression.

consequence the debtors are not entitled to the funds. The court finds otherwise.

## 1. Debtors Could Not Contract to Pay the Discharged Debt

■ The indemnity agreement purported to require the debtors to satisfy the judgment in favor of Pacific Property within 120 days. However, this judgment was wholly void, because it was based on a discharged debt. If the indemnity agreement is interpreted as an obligation of the debtors to pay the debt to Pacific Properties, in whole or in part, it would violate the discharge injunction and would be void.

Under Ninth Circuit law, the debtors were not required to take any action to remedy the state court's order. The judgment was entirely void. Although it may have been prudent for the debtors to pursue a motion to vacate the void judgment, the debtors were not required to do so.

■ There is only one way to resuscitate a debt that would otherwise be discharged in bankruptcy. A debtor must enter into a reaffirmation agreement, which is governed by § 524(c) and (d). *See generally Rein v. Providian Fin. Corp.,* 252 F.3d 1095, 1098–99 (9th Cir. 2001). Such an agreement must be made before the discharge, and must satisfy a variety of statutory requirements. *See generally In re Kamps,* 217 B.R. 836 (Bankr.C.D.Cal.1998).

However, the indemnity agreement in this case does not purport to be a reaffirmation agreement, and no party contends otherwise. Furthermore, the window of opportunity for reaffirming the debt had closed long before the indemnity agreement was made. Apart from a valid reaffirmation agreement, the Bankruptcy Code prohibits the resuscitation of any discharged debt.

## 2. Contract to Set Aside the Judgment

■ The court does not lightly assume that the indemnity contract was intended to accomplish an illegal transaction. Accordingly, the court assumes that the resurrection of a discharged debt was not its purpose. Thus it did not require the debtors to "satisfy" the debt by paying it. The agreement must have contemplated that the debt could be satisfied in some other fashion. However, after numerous summary judgment hearings, the record is altogether silent on this subject, and the court must assume that there is no further evidence available.

One legal way to "satisfy" the debt could be to obtain a judicial declaration that the judgment is void. Such a declaration would be valuable to First American, because it would eliminate the title policy risk that gave rise to the demand for the deposit. First American would then presumably be happy to return the deposit to the debtors.

■ Under California law, an indemnity obligation is contractual, and the parties have great freedom in establishing the indemnity arrangements. *See Heppler v. J.M. Peters Co.,* 73 Cal.App.4th 1265, 87 Cal.Rptr.2d 497, 508 (1999). An indemnity agreement is interpreted according to the language and contents of the contract as well as the intention of the parties as indicated by the contract. *Building Maintenance Serv. Co. v. AIL Systems, Inc.,* 55 Cal.App.4th 1014, 64 Cal.Rptr.2d 353 (1997).

The parties could also have contemplated that 120 days would be a reasonable time in which to obtain such a judicial order. Contracting to obtain such a declaration might not be illegal, notwithstanding the policy of § 524 that a debtor need do nothing to protect himself or herself from a discharged debt.

However, in this case the 120 day period was wildly optimistic. Indeed, this bankruptcy case has taken nearly three years to reach this point. While the debtors did try to have the judgment set aside in state court, and obtained a ruling there within the 120–day period, they were unsuccessful on the merits.

Finding no other suitable way to give a legal construction to this provision, the court concludes that the parties contracted for the Motleys to obtain a judicial declaration that the lien was invalid, and that they would have a reasonable time of 120 days to accomplish this. The court further finds that the 120–day period was a wildly optimistic period of time to accomplish this, and that the debtors have in fact obtained their judicial determination within a reasonable time as contemplated by the parties.

The court finds that its ruling herein satisfies the contractual requirement that the debtors "satisfy" the judgment obtained by Pacific Property. In consequence, the debtors are now entitled to the return of their deposit which they made to permit the issuance of the title insurance concomitant to the sale of their property, plus applicable interest thereon.

## IV. Conclusion

The court concludes that the funds that the debtors deposited with First American belongs to them, and that they are entitled to a return of the funds (plus applicable interest).

Whether First American is entitled to recover against Pacific Properties is an issue left for another day in another forum. This court lacks jurisdiction over this dispute, because it can have no conceivable impact on the administration of the debtors' bankruptcy estate. *See American Hardwoods, Inc. v. Deutsche*

*Credit Corp. (In re American Hardwoods, Inc.),* 885 F.2d 621, 623–24 (9th Cir.1989).