**In re KMART CORPORATION, et al., Debtors.**

**No. 02 B 02474.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

May 28, 2003.

Stuart M. Rozen, Richard G. Ziegler, Mayer, Brown, Rowe & Maw, Chicago, IL, for JDA Software, Inc.

John Wm. Butler, Jr., J. Eric Ivester, Charles F. Smith, Skadden, Arps, Slate, Meagher & Flom (Illinois), Chicago, IL, for Kmart Corporation, et al.

### MEMORANDUM OPINION

SUSAN PIERSON SONDERBY, Bankruptcy Judge.

This matter comes before the Court on the cross-motions of JDA Software, Inc. ("JDA") and Kmart Corporation ("Kmart") one of the debtors in possession herein for the entry of summary judgment with respect to JDA's motion pursuant to section 503(b)(1)(A) of the Bankruptcy Code for the allowance of an administrative claim in the amount of $291,597.07, plus attorneys' fees and expenses. For the reasons set forth herein, the motion of JDA is denied and the motion of Kmart is granted.

### JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. § 157(a), 28 U.S.C. § 1334(b) and Internal Operating Procedure 15 of the District Court for the Northern District of Illinois. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue lies in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

The facts relevant to the court's disposition of the matter are not in dispute. Kmart and 37 of its affiliates filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankrupt-

cy Code") on January 22, 2002 (the "Petition Date"). On April 23, 2003, this court entered an order confirming the First Amended Joint Plan of Reorganization of Kmart Corporation and its Affiliate Debtors and Debtors in Possession, as modified.

Kmart uses various software programs to assist in the maintenance and management of the numerous tasks and duties pertinent to performing its business operations. JDA is a licensor and provider of integrated software and professional services for retail chains. On June 22, 2001, JDA agreed to provide to Kmart a modified version of its inventory and pricing software for use in a store that Kmart planned to open in Trinidad and for later use in stores of an unspecified number to be opened in the Caribbean. At that time, Kmart was involved in a project to develop retail stores in the Caribbean. The modified software was supposed to integrate Kmart's Caribbean stores with the main Kmart computer system, enabling Kmart to track sales and inventory, and to update pricing of various products while taking into account the differences in currency, language and taxation.

Kmart's retention of JDA for this project is evidenced by three agreements each dated June 22, 2001. The parties entered into (1) a Software License Agreement for four software programs—WIN/DSS, OBDMS, Retail IDEAS (sometimes collectively referred to as the "Software Programs") and a software program named Arthur; (2) a Services Agreement in connection with the Software Programs; and (3) a Software Support Agreement, under which support services would commence March 1, 2002.

The purpose of the Services Agreement was to develop, deliver, install and support integration testing of modifications to the Software Programs under one or more statements of work or ordering documents. Various statements of work were, in fact, entered into under which JDA agreed to develop and deliver modifications to the Software Programs. The purpose of the Software Support Agreement was to provide telephone and e-mail support, updates, and program temporary fixes, or "patches," for the unmodified JDA software.

On October 2, 2001, JDA submitted a Statement of Work for the phase of services beginning on September 11, 2001 and continuing through December 31, 2001 (the "Statement of Work"). In the Statement of Work, JDA agreed to 1) modify its existing software and develop new software necessary to be compatible with Kmart's system, 2) deliver the modified JDA software to Kmart, 3) install and test the modified JDA software on Kmart's system, and 4) provide support when the Trinidad store opened.

Between September and December, 2001, JDA installed the Software Programs and the Arthur program on Kmart's computer systems. In January of 2002 (the month when Kmart filed these chapter 11 cases), a Kmart representative informed JDA that notwithstanding Kmart's bankruptcy filing, the Caribbean project was "still a go" and that Kmart wished JDA to continue performing services under the Services Contract post-petition. JDA representatives were told by at least one Kmart representative that work performed post-petition would be compensated as an administrative expense under Section 503 of the Bankruptcy Code as an inducement to continue performing under the Service Agreement. JDA representatives went ahead and performed work under the Services Agreement between January 22, 2002 and February 5, 2002.

On February 4 and February 5, 2002, JDA programmers on the Caribbean pro-

ject worked offsite at a hotel near Kmart's premises. On February 5, 2002, Kmart representatives told JDA that the opening of a Caribbean store was being delayed, and as a result, JDA's services were no longer needed. As of February 5, 2002, some but not all, of the necessary modifications to one of the three Software Programs (the WIN/DSS software) were completed and ready for delivery.[1] The parties had previously agreed that delivery would be postponed until additional modifications were completed the week of February 11, 2002. The final modifications to the WIN/DSS and Retail IDEAS software were never delivered to or installed at Kmart before the parties' relationship ended on February 5, 2002.

After February 5, 2002, JDA delivered twelve invoices to Kmart totaling $240,400.56 on account of the post-petition services performed under the Services Agreement. In late February, Kmart deleted all of the Software Programs and the Arthur program related to the Caribbean project from Kmart's computer systems. Kmart currently has no working system or software as described in the Services Agreement.

On May 9, 2002, Kmart filed a motion with this court requesting approval of its decision to reject the JDA agreements pursuant to section 365 of the Bankruptcy Code. On May 31, 2002, the court entered an agreed order providing that the JDA agreements were deemed rejected effective as of May 9, 2002. In May of 2002, Kmart postponed the Caribbean project.

In addition to work performed under the Services Agreement, JDA is also asking for $50,342.47 in pro-rated payment under the Support Agreement, for "full operation assistance through telephone and e-mail

and updates to standard software" between March 1, 2002 and May 9, 2002, the rejection date. The parties agree, however, that Kmart did not use the services provided under the Support Agreement between those dates.

## SUMMARY JUDGMENT STANDARDS

The well-established standard on a motion under Fed.R.Civ.P. 56(c) and Bankruptcy Rule 7056 is that summary judgment must be granted "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *E.g., Bellaver v. Quanex Corp.,* 200 F.3d 485, 491 (7th Cir.2000); *Feldman v. American Memorial Life Ins. Co.,* 196 F.3d 783, 789 (7th Cir.1999). The task on a motion for summary judgment is to determine whether there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied,* 519 U.S. 1115, 117 S.Ct. 957, 136 L.Ed.2d 843 (1997); *Waukesha Foundry, Inc. v. Industrial Engineering, Inc.,* 91 F.3d 1002, 1007 (7th Cir.1996).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Fritcher v. Health Care Service Corp.,* 301 F.3d 811, 815 (7th Cir.2002) (*quoting Anderson v. Liberty*

---

1. JDA concedes that the modifications that were completed and ready for delivery "prob- ably needed rework."

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Moreover, "[j]udgment as a matter of law is proper when a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Indiana Ins. Co. v. Pana Community Unit School Dist.*, 314 F.3d 895, 900 (7th Cir.2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## DISCUSSION

JDA requests that the Court allow an administrative claim in its favor pursuant to section 503(b) of the Bankruptcy Code, which would result in the claim being entitled to first priority distribution under section 507 of the Bankruptcy Code. Section 503(b) provides in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses ... including—
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

11 U.S.C. § 503(b)(1)(A).

■ Administrative priority claims are to be strictly construed because of the presumption that the debtor has limited resources to equally distribute among creditors. *See In re Amarex*, 853 F.2d 1526, 1530 (10th Cir.1988) and *In re Mammoth Mart, Inc.*, 536 F.2d 950, 953 (1st Cir.1976) ("To give priority to a claimant not clearly entitled thereto is not only inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer.")

■ The policy underlying priority treatment for administrative expenses is to encourage creditors to deal with the debtor in possession and thereby support the reorganization effort. *Matter of Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir.1984). To that end, the subject debt will only be afforded priority under section 503 of the Bankruptcy Code if it both (a) arises out of a transaction with the debtor in possession; and (b) is beneficial to the operation of the debtor in possession's business. *Id.*

■ The claimant has the burden of proving entitlement to an administrative expense by preponderance of the evidence. *In re Party Masters, Inc.*, 1992 WL 106259 (Bankr.N.D.Ill. Apr. 23, 1992). The claimant must demonstrate that the benefit is more than a speculative or potential benefit. *In re Lickman*, 273 B.R. 691, 704 (Bankr.M.D.Fla.2002). The benefit must be "an actual, concrete benefit for the estate before a claim is allowable ... as an administrative expense." *Id.* (*quoting In re Subscription Television of Greater Atlanta*, 789 F.2d at 1532). Finally, the claimant must establish that the estate was benefitted as a whole. *In re Pettibone Corp.*, 90 B.R. 918, 933 (Bankr.N.D.Ill. 1988).

The parties agree that JDA's claim arises out of a transaction with the debtor in possession, thus satisfying the first element. The second element of the *Jartran* test is the principal focus of the dispute. Specifically, whether the work JDA performed post-petition benefitted the estate.

Kmart argues that benefit is demonstrated by the debtor in possession's *actual* use of the services performed by the vendor on a post-petition basis. Kmart contends that JDA has not demonstrated that Kmart actually used the services, thereby benefitting the estate. Consequently, JDA fails to demonstrate entitlement to an administrative expense.

JDA argues that by virtue of Kmart's request that its services be performed post-petition, Kmart acknowledged that the services were of benefit, and that JDA should therefore be paid for them as an administrative claim. In making such an argument, JDA collapses the two-pronged *Jartran* test, effectively disposing of the "benefit" prong. The "inducement" aspect in *Jartran* exists for the sake of assisting the court in finding that a transaction with the debtor in possession has occurred in those circumstances where an executory contract was entered into between the parties prior to the filing of the bankruptcy case. The question in that scenario becomes, "did the debtor in possession induce the creditor's performance?" If so, then finding a transaction with the debtor in possession is a plausible result, even though the contract was not entered into post-petition. Whether the estate benefitted from such a transaction, however, is a separate inquiry altogether, and one engaged in only after concluding that the creditor entered into a transaction with the debtor in possession. Put another way, post-petition performance alone does not automatically translate into a benefit to the estate, even if there was inducement on the part of the debtor.

In this matter, the undisputed material facts demonstrate that Kmart has nothing to show for the post-petition work that JDA performed. The standard software JDA provided was of no value to Kmart without the complete and satisfactory modifications and guidance of JDA. As a result, Kmart deleted the standard JDA software from the system in late February, 2002 and to this day has no working system or software as described in the Services Agreement. JDA did deliver and install some software modifications between January 22, 2002 and February 5, 2002 (which admittedly "probably needed rework" and were not all the modifications that were necessary to interface the system), but JDA has not demonstrated that Kmart derived any benefit from them.

The fact that JDA performed work on the modifications post-petition does not in and of itself mean that Kmart used, and thus benefitted, from that work. As stated earlier, post-petition performance that may in the future impart "some potential benefit, ... is too speculative to be allowed as an 'actual, necessary cost and expense of preserving the estate.'" *In re Subscription Television of Greater Atlanta,* 789 F.2d 1530, 1532 (11th Cir.1986), *see also Mammoth Mart,* 536 F.2d at 953 ("... even when there has technically been performance by the contract creditor during the reorganization period, he will not be entitled to ... priority if the bankrupt estate was not benefitted in fact therefrom.").

JDA cites *In re Whitcomb & Keller Mortgage Co. Inc.,* 715 F.2d 375 (7th Cir. 1983) for the proposition that upon receipt of services by a debtor during the administration of the estate, the provider's indebtedness is elevated to priority status. The rule is not as black and white as JDA asserts. First of all, in *Whitcomb & Keller,* the post-petition services provided by the vendor were operating expenses which the debtor paid in full. Further, the parties had stipulated that the computer services being provided were not only beneficial, but essential to the administration of the estate, thus jettisoning the creditor's status to administrative priority. That is not the case here. In order to be essential, or at least beneficial to the estate, the products or services provided must, at the very least, be utilized by the debtor. *See In re Carmichael,* 109 B.R. 849, 852 (Bankr.N.D.Ill.1990). Even though JDA performed work on the modifications during the post-petition period, its efforts do

not necessarily equate with benefit to the Kmart estate.

The cases cited by the claimant do not address situations where the debtor in possession does not utilize the services provided by the administrative expense claimant, who receives priority status on account of its efforts. For example, in *In re Enron Corp.*, 279 B.R. 695 (Bankr.S.D.N.Y.2002) the court pointed out that the potential benefit to an estate provided by storage of a creditor's property as available inventory for potential use is not the equivalent of actual use, and held that the creditor's claim for charges owed for the availability of pipeline capacity that was neither used to transport natural gas nor released to a third-party are not entitled to administrative expense priority. Similarly, in this matter, the worked performed by JDA between January 22, 2002 and February 5, 2002 was simply not utilized by Kmart. Merely referencing invoices is not sufficient to raise a genuine issue of material fact with respect to the issue of benefit to the Kmart estate.

■ In addition to work performed under the Services Agreement, JDA seeks $50,342.47 in pro-rated payment under the Support Agreement, for "full operational assistance through telephone and e-mail and updates to standard software" between March 1, 2002 and May 9, 2002. The parties agree, however, that Kmart did not use the assistance under the Support Agreement between March 1, 2002 and May 9, 2002. This request therefore is also denied.

### CONCLUSION

Because JDA failed to make a showing sufficient to establish the existence of an element essential to its case on which it would bear the burden of proof at trial, i.e. benefit to the Kmart estate, judgment as a matter of law is entered in favor of Kmart.

Therefore, the court denies the motion of JDA Software, Inc. for summary judgment on its motion for allowance of administrative claim and grants the motion of Kmart Corporation for entry of summary judgment. The motion of JDA Software, Inc. for allowance of administrative claim is denied and the objection of Kmart Corporation thereto is sustained.

### ORDER

For the reasons stated in its Memorandum Opinion entered on this date, the court denies the motion of JDA Software, Inc. for summary judgment on its motion for allowance of administrative claim and grants the motion of Kmart Corporation for entry of summary judgment. The motion of JDA Software, Inc. for allowance of administrative claim is denied and the objection of Kmart Corporation thereto is sustained.