[No. B229109. Second Dist., Div. Five. Jan. 25, 2012.]

RACHEL FLORES et al., Plaintiffs and Appellants, v.
KMART CORPORATION, Defendant and Respondent.

COUNSEL

The Arkin Law Firm, Sharon J. Arkin; Clapper, Patti, Schweizer & Mason, Jack K. Clapper, Steven J. Patti, Christine A. Renken; Farrise Firm and Simona A. Farrise for Plaintiffs and Appellants.

Pond North, Frank D. Pond, Previn A. Wick and Anosheh Azarmsa for Defendant and Respondent.

OPINION

**TURNER, P. J.—**

## I. INTRODUCTION

Under federal bankruptcy law, the discharge of liability for an unliquidated, contingent or unmatured claim can bar a suit to collect a debt. (11 U.S.C. §§ 101(2), 524(a), 1141(d)(1)(A).)[1] In this case, Martin Flores, according to the first amended complaint, was exposed to asbestos in 1989 while performing construction work in a store operated by defendant, Kmart Corporation. On January 22, 2002, defendant and 37 affiliates filed chapter 11 bankruptcy petitions. (*In re Kmart Corp.* (Bankr. N.D.Ill. 2002) 286 B.R. 345, 346.) On April 22, 2003, the bankruptcy court made findings of fact and conclusions of law and entered an order confirming defendant's first amended joint reorganization plan (the reorganization plan). (*In re Kmart Corp.* (Bankr. N.D.Ill. 2003) 293 B.R. 905, 907.) The April 22, 2003 order discharged all known and unknown claims against defendant. In support of its demurrer, defendant sought judicial notice of parts of the April 22, 2003 reorganization plan. There is no evidence Mr. Flores or his family had any notice of the 2002 and 2003 bankruptcy proceedings. On some unspecified date, Mr. Flores sustained malignant mesothelioma. The first amended complaint does not allege when Mr. Flores became aware he was ill. There is no evidence Mr. Flores's identity or illness was reasonably ascertainable by defendant prior to the April 22, 2003 approval of the reorganization plan. On June 19, 2008, Mr. Flores died of malignant mesothelioma. Plaintiffs filed a wrongful death action on December 17, 2008. Plaintiffs are Mr. Flores's wife, Rachel Flores, and their two children, Adrian and Christian.

Defendant contends the April 22, 2003 order approving the reorganization plan and discharge order bars Mr. Flores's family from recovering damages

---

[1] Unless otherwise noted, all future statutory references are to title 11 of the United States Code.

resulting from his alleged asbestos exposure. The parties posit two controlling issues. First, defendant argues that the unliquidated, contingent or unmatured damage claims were discharged by the April 22, 2003 approval of the reorganization plan and discharge order. Second, plaintiffs argue the discharge order violates their Fourteenth Amendment due process rights as there is no evidence they received notice of the potential approval of the reorganization plan. We need not resolve the first issue—whether a discharge occurred on April 22, 2003. But we do resolve the due process issue. Based on the limited record provided by defendant, we conclude that, consistent with Fourteenth Amendment due process principles, the April 22, 2003 approval of the reorganization plan cannot discharge plaintiffs' claims. Thus, the trial court's demurrer dismissal, which is premised on the conclusion the reorganization plan is enforceable against plaintiffs, must be reversed.

We emphasize the narrow nature of our ruling. We merely hold defendant has failed to demonstrate, at the demurrer stage, that the April 22, 2003 approval of the reorganization plan bars all of the first amended complaint's claims. And we reach our decision based on the limited record of bankruptcy proceedings provided by defendant.

## II. PROCEDURAL HISTORY

### A. The First Amended Complaint

In reviewing an order after a demurrer is sustained without leave to amend, all well-pleaded factual allegations must be assumed as true. (*Naegele v. R.J. Reynolds Tobacco Co.* (2002) 28 Cal.4th 856, 864–865 [123 Cal.Rptr.2d 61, 50 P.3d 769]; *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 946 [119 Cal.Rptr.2d 296, 45 P.3d 243].) Plaintiffs filed a wrongful death action on December 17, 2008. Ms. Flores is the guardian ad litem for the two children. Plaintiffs filed their first amended complaint on April 27, 2010. The first amended complaint alleges Mr. Flores was exposed to asbestos and asbestos-related products while working from 1989 through 2007; he was exposed to asbestos while performing construction work at defendant's Riverside store from 1989 to 1990; the exposure caused him to die on June 19, 2008, from malignant mesothelioma. The first amended complaint contains 19 causes of action against various named parties for negligence and products and premises liability. The causes of action against defendant are negligence (eighth); negligent hiring (ninth); consortium loss (10th); wrongful death (18th); and negligent hiring (19th). The first amended complaint contains no allegations concerning defendant's bankruptcy litigation.

### B. The Demurrer

### 1. Overview

Defendant demurred to the first amended complaint on the grounds any claims against it were discharged by the April 22, 2003 approval of the reorganization plan and entry of the discharge order. Defendant requested judicial notice of portions of the bankruptcy court's April 22, 2003 reorganization plan. We summarize the pertinent portion of the April 22, 2003 findings of fact and conclusions of law and reorganization plan.

### 2. Notice findings

As will be noted, at issue here is the sufficiency of the proof of notice to plaintiffs of the contemplated confirmation of the reorganization plan and discharge order. The bankruptcy court made two findings relevant to the notice issue. In the reorganization plan, the bankruptcy court found that notice of the confirmation hearing was provided by publication, "The Debtors published the Confirmation Hearing Notice in The Wall Street Journal (National Edition), The New York Times (National Edition) and USA Today (National Edition) on March 7, 2003. . . ." Additionally, in the reorganization plan, the bankruptcy court found in connection with *known* claimants: "Due, adequate and sufficient notice of the Disclosure Statement and Plan and of the Confirmation Hearing, along with all the deadlines for voting on or filing objections to the Plan, has been given to all known holders of Claims in accordance with the procedures set forth in the Solicitation Procedures Order. The Disclosure Statement, Original Plan, Ballots, Solicitation Procedures Order, Confirmation Hearing Notice, Unimpaired Creditors Notice, Notice of Nonvoting Status, the Unsecured Creditors' Committee's solicitation statement with respect to the Original Plan, and the Financial Institution's Committee's solicitation statement with respect to the Original Plan were transmitted and served in substantial compliance with the Solicitation Procedures Order and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and the other bar dates and hearings described in the Solicitation Procedures Order was given in compliance with the Bankruptcy Rules and the Solicitation Procedures Order, and no other or further notice is or shall be required."

### 3. Injunctive provisions

Paragraph 12 of the reorganization plan provides, "Except as otherwise specifically provided in the Plan and except as may be necessary to enforce or remedy a breach of Plan, the Debtors, and all Persons who have held, hold

or may hold Claims or Interests and any successors, assigns or representatives of the foregoing shall be precluded and permanently enjoined on and after the Effective Date from: (a) commencing or continuing in any manner any Claim, action or other proceeding of any kind with respect to any Claim, Interest or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any Claim, Interest or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date. . . ."

Paragraph 39 of the reorganization plan states, "Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction as provided in this Plan over all matters arising out of and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including among other items and matters, jurisdiction over those items and matters set forth in Article XIV of the Plan." Article XIV of the reorganization plan states: "Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and this Plan, including, among others, the following matters: . . . [¶] . . . [¶] (k) to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan or the Confirmation Order including disputes arising under agreements, documents or instruments executed in connection this Plan; [¶] . . . [¶] (o) to hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge. . . ."

4. Discharge orders

Article 12.2 of the reorganization plan discharges all known and unknown debts: "**Discharge of the Debtors**. Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Confirmation Date (but subject to the occurrence of the Effective Date), of Claims and Courses of Action, whether known or unknown, against liabilities of, liens on, obligations of, rights against, and interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on the account of such Claims, rights, and interests. . . ."

### C. Demurrer Opposition

Plaintiffs argued the bankruptcy orders did not discharge their asbestos claim which is a "unique tort" because asbestos injuries are normally latent; the absence of notice of the bankruptcy proceedings does not satisfy due process standards when the claimant's injuries have not manifested; and without manifestation, an asbestos claimant would either lack knowledge of the injury or could not be identified as a victim. Plaintiffs argued defendant's notice of the contemplated reorganization plan was inadequate. Plaintiffs argued notice by publication was inadequate to provide reasonable notice to potential asbestos claimants of the proposed reorganization plan. And, plaintiffs argued there were no provisions in the confirmation order addressing potential asbestos claimants. Plaintiffs asserted the trial court should apply the "fair contemplation" analysis utilized by the Ninth Circuit Court of Appeals. Under the fair contemplation law, no discharge may occur if the claimant could not reasonably contemplate the existence of the claim prior to the debtor's reorganization. According to plaintiffs, the trial court had subject matter jurisdiction over their claims against defendant, which are outside the bankruptcy estate. As can be noted, plaintiffs expressly asserted enforcement of the April 22, 2003 reorganization plan would violate their due process rights.

### D. Reply to Opposition

In reply, defendant asserted plaintiffs cannot dispute that federal bankruptcy law provides that an asbestos claim arises at the moment of contact; the notice was adequate as a matter of law; it was not required to comply with standards requiring a trust to administer asbestos claims that manifest postconfirmation due to the latent nature of mesothelioma; and it has had no pending asbestos litigation. Defendant further argued the bankruptcy court had exclusive jurisdiction over the interpretation, implementation and scope of its order; plaintiffs' remedy against defendant was to file an action for a determination and adjudication of whether the claims are discharged in bankruptcy court; plaintiffs are required to secure an order lifting the bankruptcy court's injunction order before proceeding with this action; and in article XIV of the reorganization plan, jurisdiction was retained to adjudicate questions about the existence, nature and scope of the discharge. Defendant presented no new judicially noticeable materials in connection with the reply.

### E. The Trial Court's Ruling

The trial court ruled that, because defendant was not being sued as a manufacturer or producer of asbestos products, the trust issues were not pertinent. Rather, defendant was being sued on various premises liability

theories. The trial court ruled defendant's premises liability obligations to creditors had been resolved by the bankruptcy court. The trial court sustained the demurrer without leave to amend. This timely appeal followed.

## III. DISCUSSION

### A. Standard of Review

The Supreme Court has defined our task as follows: "On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 [62 Cal.Rptr.3d 614, 161 P.3d 1168]; see *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300 [58 Cal.Rptr.2d 855, 926 P.2d 1042].)

■ In order for the demurrer to be sustained, the first amended complaint and the judicially noticeable reorganization plan must demonstrate plaintiffs' claims are in fact barred by the bankruptcy court's discharge order. (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183 [123 Cal.Rptr.2d 637] ["[A] demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense."]; *CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 635 [76 Cal.Rptr.2d 615] ["A demurrer based on an affirmative defense cannot properly be sustained where the action might be barred by the defense, but is not necessarily barred." (italics omitted)]; see *McKenney v. Purepac Pharmaceutical Co.* (2008) 167 Cal.App.4th 72, 79 [83 Cal.Rptr.3d 810] ["[T]he issue before us is whether the allegations of that pleading, in conjunction with other matters that may be judicially noticed . . . , demonstrate that all possible recovery by [plaintiff] is barred by the defense of federal preemption." (citation omitted)].) ■ Discharge in bankruptcy of a cause of action asserted in state court litigation is a defense. (*In re Pavelich* (Bankr. 9th Cir. 1999) 229 B.R. 777, 783 [discharge in bankruptcy is a recognized defense under state law]; *Forman v. Scott* (1964) 231 Cal.App.2d 340, 343 [41 Cal.Rptr. 805]; *Harrell v. Hoagland* (1937) 18 Cal.App.2d 721, 722 [64 P.2d 953] ["[D]ischarge in bankruptcy is a special defense and it must be pleaded."].) If it is unclear whether the reorganization plan and

discharge order are enforceable against the plaintiffs, the demurrer must be overruled. ■ (*StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9 [84 Cal.Rptr.2d 843, 976 P.2d 214] ["When judicial notice is taken of a document, however, the truthfulness and proper interpretation of the document are disputable."]; *Williams v. Southern California Gas Co.* (2009) 176 Cal.App.4th 591, 600 [98 Cal.Rptr.3d 258] [" ' "[J]udicial notice of matters upon demurrer will be dispositive only in those instances where there is not or cannot be a factual dispute concerning that which is sought to be judicially noticed." ' "].) In *Cruz v. County of Los Angeles* (1985) 173 Cal.App.3d 1131, 1134 [219 Cal.Rptr. 661], the Court of Appeal explained in a case where judicial notice was sought of a practice of mailing rejection notices: "[A]ssuming for purposes of argument that respondent's customary practice in respect of mailing notices of rejection constituted an official act, of which judicial notice might be taken [citation], there was not incontrovertibly contained therein the fact that such practice had been followed in the present instance. On the contrary, it was the very dispute over that fact which occasioned the request for judicial notice of the practice. Accordingly, and because it was inappropriate at that stage of the proceedings to resolve the factual issue involved, it was error for the trial court to sustain respondent's demurrer."

### B. Jurisdiction

■ Defendant argues no state court has jurisdiction to determine whether the debts were discharged. According to defendant the issue of the application of the April 22, 2003 findings and orders should have been resolved by the bankruptcy court. And defendant argues the bankruptcy court retained exclusive jurisdiction to interpret the breadth and scope of the discharge order. Generally, state and federal courts have concurrent jurisdiction to decide whether a claim within a discharge order is a discharged debt. (28 U.S.C. § 1334(b) ["[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."]; *In re Pavelich, supra,* 229 B.R. at p. 783 ["[S]tate courts have the power to construe the discharge and determine whether a particular debt is or is not within the discharge."]; *In re Siragusa* (9th Cir. 1994) 27 F.3d 406, 408; *In re Franklin* (Bankr. E.D.Cal. 1995) 179 B.R. 913, 920.) Thus, a state court may consider the applicability of a bankruptcy discharge when it is raised as a defense to an action. (*Local Loan Co. v. Hunt* (1934) 292 U.S. 234, 240 [78 L.Ed. 1230, 54 S.Ct. 695] ["the effect of a discharge in bankruptcy is a matter to be determined by any court in which the discharge may be pleaded"]; *In re McGhan* (9th Cir. 2002) 288 F.3d 1172, 1180; *In re Gruntz* (9th Cir. 2000) 202 F.3d 1074, 1082; *In re Lenke* (Bankr. D.Ariz. 2000) 249 B.R. 1, 8.)

## C. The Discharge Order and Due Process

### 1. Overview of the problem

The first amended complaint alleges Mr. Flores was exposed to asbestos while working as a subcontractor at defendant's Riverside store sometime in or around 1989 or 1990. The first amended complaint does not allege when Mr. Flores discovered he was exposed to asbestos. Further, there is no allegation as to when Mr. Flores knew or should have known he had contracted malignant mesothelioma. Defendant filed its chapter 11 bankruptcy petition on January 22, 2002. There is no evidence Mr. Flores or any of the plaintiffs had notice of the bankruptcy proceedings; Mr. Flores's claim or that of any plaintiff was listed on the schedule of debts; and Mr. Flores or plaintiffs received actual notice of the hearing where the reorganization plan was approved. The bankruptcy court confirmed the reorganization plan on April 22, 2003. The reorganization plan discharged all known and unknown claims against defendant.

Plaintiffs argue the bankruptcy documents cannot show a discharge as a matter of law. First, plaintiffs argue their asbestos claim could not be statutorily discharged. Plaintiffs reason they (and Mr. Flores) could not fairly contemplate his asbestos claim on April 22, 2003, when the order approving the reorganization plan was entered. Second, plaintiffs argue there is no evidence or allegations they had prior notice of the hearing which resulted in the April 22, 2003 approval of the reorganization plan. We will only resolve the latter due process contention.

### 2. Statutory requirement that a claim exist in order for it to be discharged

■ Once a reorganization plan is confirmed, all of the debtor's debts that arose before the confirmation date are discharged. (§ 1141(d)(1)(A); *FCC v. NextWave Personal Communications Inc.* (2003) 537 U.S. 293, 303 [154 L.Ed.2d 863, 123 S.Ct. 832].) Section 524(a) provides in part: "(a) A discharge in a case under this title—[¶] (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section . . . 1141 . . . of this title, whether or not discharge of such debt is waived; [¶] (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ." ■ The United States Supreme Court explained: "The discharge order releases a debtor from personal liability with respect to any discharged debt by voiding any past or future judgments on the

debt and by operating as an injunction to prohibit creditors from attempting to collect or to recover the debt. [Citations.]" (*Tennessee Student Assistance Corporation v. Hood* (2004) 541 U.S. 440, 447 [158 L.Ed.2d 764, 124 S.Ct. 1905]; see *Johnson v. Home State Bank* (1991) 501 U.S. 78, 84, fn. 5 [115 L.Ed.2d 66, 111 S.Ct. 2150].) Any actions taken, including state judicial decrees, in violation of the bankruptcy injunction are void. (§ 524(a); *In re Gruntz, supra,* 202 F.3d at p. 1082; *In re Gurrola* (Bankr. 9th Cir. 2005) 328 B.R. 158, 175–176; *In re Motley* (Bankr. C.D.Cal. 2001) 268 B.R. 237, 241.)

■ A debt is defined as a liability on a claim. (§ 101(12); *FCC v. NextWave Personal Communications Inc., supra,* 537 U.S. at p. 302.) Section 101(5)(A) broadly defines the term "claim" thusly: "The term 'claim' means—[¶] (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." (See *United States v. Galletti* (2004) 541 U.S. 114, 118 [158 L.Ed.2d 279, 124 S.Ct. 1548].) ■ Prior to the confirmation hearing, a debtor is statutorily entitled to notice of the contemplated discharge. (§§ 102(1), 1128(a); Fed. Rules Bankr.Proc., rule 2002(b), 11 U.S.C.; *In re Barton Industries, Inc.* (10th Cir. 1997) 104 F.3d 1241, 1245.) In bankruptcy cases, notice is statutorily adequate if it is appropriate in the particular circumstances. (§ 102(1) [" 'after notice and a hearing', or a similar phrase—[¶] (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances . . . ."]; *In re Barton Industries, Inc., supra,* 104 F.3d at p. 1245 ["the bankruptcy court may only confirm a Chapter 11 plan after notice that 'is appropriate in the particular circumstances' "].) As plaintiffs' causes of action are a claim, then they may have been discharged, subject to due process limitations. (*In re Grossman's Inc.* (3d Cir. 2010) 607 F.3d 114, 122; *In re Manville Forest Products Corp.* (2d Cir. 2000) 209 F.3d 125, 128.)

Federal courts have recognized three different rules for determining whether a prepetition claim where the injury manifested itself after the discharge order is a claim within the meaning of section 101(5)(A). The first test is the Fourth Circuit "conduct" rule. (*Grady v. A.H. Robins Co., Inc.* (4th Cir. 1988) 839 F.2d 198, 201–203; see *In re Grossman's Inc., supra,* 607 F.3d at pp. 122–123.) A version of this rule is referred to as the "Third Circuit relationship test"—a claim exists when there is a prepetition relationship. (*Epstein v. Official Committee of Unsecured Creditors* (11th Cir. 1995) 58 F.3d 1573, 1578; see *In re Grossman's Inc., supra,* 607 F.3d at p. 123.) Under the Fourth Circuit rule, the date of exposure determines when a claim exists. Thus, if there is a prepetition exposure to asbestos, then it is a claim within the meaning of section 101(5)(A) and is subject to discharge. This is true even if the claimant does not become ill until after the discharge occurs. (See

*Epstein v. Official Committee of Unsecured Creditors, supra,* 58 F.3d at pp. 1577–1578; *In re Parker* (10th Cir. 2002) 313 F.3d 1267, 1269; *In re Wheeler* (5th Cir. 1998) 137 F.3d 299, 300.)

The second rule is the Ninth Circuit "reasonable contemplation" test. (*California Dept. of Health Services v. Jensen* (9th Cir. 1993) 995 F.2d 925, 930.) Under the Ninth Circuit test, "[A] claim arises under the bankruptcy code once it is within the claimant's 'fair contemplation' . . . ." (*In re ZiLOG, Inc.* (9th Cir. 2006) 450 F.3d 996, 999, citing *California Dept. of Health Services v. Jensen, supra,* 995 F.2d at p. 930.) Thus, if the cause of action is within a claimant's "fair contemplation," then it is a claim and is dischargeable.

The third rule is a mixture of the "conduct" and "fair contemplation" tests. The Third Circuit recognizes that in the asbestos exposure context, the pertinent date is when exposure occurs: "Irrespective of the title used, there seems to be something approaching a consensus among the courts that a prerequisite for recognizing a 'claim' is that the claimant's exposure to a product giving rise to the 'claim' occurred pre-petition, even though the injury manifested after the reorganization. We agree and hold that a 'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." (*In re Grossman's Inc., supra,* 607 F.3d at p. 125; see *Nye v. Bayer Cropscience, Inc.* (Tenn. 2011) 347 S.W.3d 686, 696–697.) Yet, the Third Circuit tempered the exposure or conduct test with various equitable and due process considerations: "Whether a particular claim has been discharged by a plan of reorganization depends on factors applicable to the particular case and is best determined by the appropriate bankruptcy court or the district court. In determining whether an asbestos claim has been discharged, the court may wish to consider, inter alia, the circumstances of the initial exposure to asbestos, whether and/or when the claimants were aware of their vulnerability to asbestos, whether the notice of the claims bar date came to their attention, whether the claimants were known or unknown creditors, whether the claimants had a colorable claim at the time of the bar date, and other circumstances specific to the parties, including whether it was reasonable or possible for the debtor to establish a trust for future claimants as provided by § 524(g)." (*In re Grossman's Inc., supra,* 607 F.3d at pp. 127–128; accord, *Wright v. Owens Corning* (W.D.Pa. 2011) 450 B.R. 541, 544–555.)

The parties urge us to choose one of these tests or variations thereof. We decline to do so. Because we are not going to choose which standard to adopt, we have merely synthesized the various tests for purposes of clarity. Likewise, we do not decide whether there is sufficient evidence of statutory

notice. The controlling issue is whether the demurrer should have been sustained. That issue is conclusively resolvable on constitutional due process grounds.

### 3. Notice of the hearing when the reorganization plan was approved

· ■ As noted, prior to the plan confirmation hearing, a debtor is statutorily and by rule entitled to notice of the contemplated discharge. (§ 102(1), 1128(a), Fed. Rules Bankr.Proc., rule 2002(b), 11 U.S.C.) But the notice must also comply with Fourteenth Amendment due process requirements. (*United Student Aid Funds, Inc. v. Espinosa* (2010) 559 U.S. ___, ___ [176 L.Ed.2d 158, 130 S.Ct. 1367, 1378] (*Espinosa*).) The due process issue arose in *Espinosa* in the context of a bankruptcy adversary proceeding. In a chapter 13 adversary proceeding, the debtor must serve a summons and complaint on the creditor, which in this case arose from Mr. Espinosa's failure to completely repay student loans. (Fed. Rules Bankr.Proc., rules 7001(6), 7003–7004, 7007, 11 U.S.C.) Although no summons and complaint was served, the bankruptcy court clerk, as required by the bankruptcy rules, sent a copy of Mr. Espinosa's proposed plan to the lender. (559 U.S. at pp. ___–___ [130 S.Ct. at pp. 1373–1374].) The lender filed a claim with the bankruptcy court. (*Id.* at p. ___ [130 S.Ct. at p. 1374].) The bankruptcy court approved Mr. Espinosa's plan which only discharged the interest on his student loan.

Later, the United States Department of Education and the lender attempted to recoup the unpaid interest. The lender asserted the discharge order was void in part on due process grounds. (*Espinosa, supra*, 559 U.S. at pp. ___–___, ___ [130 S.Ct. at pp. 1374–1375, 1378].) The United States Supreme Court identified the constitutional due process test in the notice context: "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' *Mullane* v. *Central Hanover Bank & Trust Co.* [(1950)] 339 U. S. 306, 314 [94 L.Ed. 865, 70 S.Ct. 652] . . . ; see also *Jones* v. *Flowers* [(2006)] 547 U. S. 220, 225 [164 L.Ed.2d 415, 126 S.Ct. 1708] . . . ('[D]ue process does not require actual notice . . .')." (*Espinosa, supra*, at p. ___ [130 S.Ct at p. 1378].) Prior to *Espinosa*, other courts applied a similar due process analysis to scenarios where a debtor did not receive notice of a reorganization plan hearing. (*In re Longardner & Associates, Inc.* (7th Cir. 1988) 855 F.2d 455, 465 ["This notice of the pendency of a hearing to consider confirmation of the plan is sufficient to satisfy due process requirements because the creditor had the opportunity to be heard at that March 7 hearing."]; *Reliable Electric Co. v. Olson Construction Co.* (10th Cir. 1984) 726 F.2d 620, 623 ["[N]otwithstanding the language of section 1141, the discharge of a claim without reasonable

notice of the confirmation hearing is violative of the fifth amendment to the United States Constitution."]; *In re St. James Mechanical, Inc.* (Bankr. E.D.N.Y. 2010) 434 B.R. 54, 62 [" '[A] confirmation order cannot act to discharge and enjoin a claim unless the claimant has received adequate notice of the bankruptcy proceeding and any of the claims bar dates fixed therein.' "]; *In re CareMatrix Corp.* (Bankr. D.Del. 2004) 306 B.R. 478, 486 ["[W]hen a creditor does not receive adequate notice, the creditor is not bound by the confirmation order."].)

But in *Espinosa*, the United States Supreme Court held no due process violation occurred. This was because the lender had actual notice of Mr. Espinosa's proposed reorganization plan. As noted, the bankruptcy court clerk sent a copy of Mr. Espinosa's proposed reorganization plan to the lender prior to the hearing where it was approved. This provided actual notice. (*Espinosa, supra,* 559 U.S. at p. ___ [130 S.Ct. at p. 1378]; see *In re Smith* (Bankr. M.D.Fla. 2011) 449 B.R. 817, 820.) The present case is radically different. In terms of actual notice, defendant has presented no evidence. Apart from portions of the reorganization plan, no bankruptcy documents including schedules of debts or proofs of service were filed in the trial court.

 But defendant argues that notice was published in The New York Times, USA Today and The Wall Street Journal. Actual notice to known creditors, or those whose identities are reasonably ascertainable, is required in bankruptcy proceedings. (*Tulsa Professional Collection Services v. Pope* (1988) 485 U.S. 478, 491 [99 L.Ed.2d 565, 108 S.Ct. 1340]; *Matter of Crystal Oil Co.* (5th Cir. 1988) 158 F.3d 291, 297 [publication in The Wall Street Journal insufficient].) And the United States Supreme Court has held that if the names, interests and addresses of creditors in bankruptcy proceedings are unknown, service by publication *may* comply with due process notice requirements. (*New York v. N. Y. N. H. & H. R. Co.* (1953) 344 U.S. 293, 296 [97 L.Ed. 333, 73 S.Ct. 299].)

If a creditor's identity is known or reasonably ascertainable, service by publication does not comply with the Fourteenth Amendment due process clause notice requirement—actual notice is constitutionally required. (*Tulsa Professional Collection Services v. Pope, supra,* 485 U.S. at pp. 489–490; *Mennonite Board of Missions v. Adams* (1983) 462 U.S. 791, 800 [77 L.Ed.2d 180, 103 S.Ct. 2706].) Further, if a creditor's identity is unknown or cannot be ascertained with reasonable diligence, publication can suffice. (*Tulsa Professional Collection Services v. Pope, supra,* 485 U.S. at p. 490; *Mullane v. Central Hanover Bank & Trust Co., supra,* 339 U.S. at p. 317.) And publication can comply with the Fourteenth Amendment due process notice requirement if a claim is merely conjectural. (*Tulsa Professional Collection Services v. Pope, supra,* 485 U.S. at p. 490; *Mullane Central Hanover Bank & Trust Co., supra,* 339 U.S. at p. 317.)

But here, there is no evidence or judicially noticeable materials which prove Mr. Flores's or plaintiffs' identities were reasonably ascertainable. If their identities were reasonably ascertainable, then actual notice was mandatory. But if their identities were not reasonably ascertainable or their claims were conjectural, then service by publication may suffice. In *Tulsa Professional Collection Services v. Pope, supra,* 485 U.S. at page 491, the United States Supreme Court confronted a similar situation to the one before us. There was no evidence as to whether a creditor's identity was reasonably ascertainable so as to require actual notice. The Supreme Court remanded to allow a hearing on whether the creditor's identity was reasonably ascertainable. (*Ibid.*) Our situation is different in that we are reviewing a demurrer dismissal. Defendant has not requested that a further hearing be held in connection with the demurrer where additional judicially noticeable evidence may be considered. Thus, the limited record provided by defendant is insufficient to permit us to enforce the discharge order *at the demurrer stage.*

■ We wish to reemphasize the limited nature of our holding. We have not construed or modified the confirmation plan. Nor have we held the confirmation does not apply to plaintiffs if there was proper notice given to them. Our holding is very limited—defendant has provided insufficient evidence the confirmation plan may constitutionally apply to plaintiffs and thus requires dismissal. Plaintiffs have expressly objected on due process grounds to the application of the confirmation plan to them. Mr. Flores's alleged injuries initially arise in the context of a prepetition exposure to asbestos. There is no evidence as to when Mr. Flores became aware he had contracted malignant mesothelioma. Defendant has provided only a portion of the bankruptcy court documents. No judicially noticeable documents shed any light on the issue of whether Mr. Flores's or plaintiffs' identities were reasonably ascertainable so as to permit service of any notice by publication. We obviously express no views on what would happen if a more expansive showing were made on the due process issue in judgment on the pleadings, summary judgment or in limine motions. As to plaintiffs, this lawsuit is at its preliminary stages. Whether there is additional, possibly dispositive, evidence on the due process issue remains to be seen. (See *Kasky v. Nike, supra,* 27 Cal.4th at p. 949.) And we recognize there are many scenarios where a bankruptcy discharge order will be sufficient to support a demurrer dismissal. (*Terzian v. California Cas. Indem. Exch.* (1969) 3 Cal.App.3d 90, 97–98 [83 Cal.Rptr. 255] [judicial notice of bankruptcy petition listing of the defendant in schedule of debtors and discharge order demonstrates debt was discharged].)

## IV. DISPOSITION

The demurrer dismissal order is reversed. Plaintiffs, Rachel, Adrian and Christian Flores, are to recover their costs incurred on appeal from defendant, Kmart Corporation.

Armstrong, J., and Mosk, J., concurred.